Judge Ricardo S. Martinez

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

9

UNITED STATES OF AMERICA, *ex rel.* EVA
ZEMPLENYI, M.D., and EVA ZEMPLENYI,
M.D., individually,

10

           Plaintiffs,

11

12

  vs.

13

GROUP HEALTH COOPERATIVE, GROUP
HEALTH PERMANENTE, GROUP HEALTH
OPTIONS, INC., KPS HEALTH PLANS,
GROUP HEALTH NORTHWEST, MICHAEL
LEE, M.D., TERRENCE CLARK, O.D., JOHN
DOES 1-20,

14

15

16

17

          Defendants.

18

NO.  C09-0603 RSM

**MOTION TO DISMISS
AMENDED COMPLAINT UNDER
RULES 9(b) AND 12(b)(6) AND
MEMORANDUM IN SUPPORT**

**NOTED FOR HEARING:
MAY 21, 2010**

**ORAL ARGUMENT
REQUESTED**

19

<u>**MOTION**</u>

20

  Defendants Group Health Cooperative, Group Health Permanente, Group Health

21

Options, Inc., KPS Health Plans, Group Health Northwest, Michael Lee, M.D., Terrence

22

Clark, O.D., and John Does 1-20 (collectively, "Defendants") hereby request that the Court

23

DISMISS Plaintiff's Amended Complaint under Federal Rules of Civil Procedure 9(b) and

24

12(b)(6) because the Relator, Eva Zemplenyi ("Dr. Zemplenyi" or "Relator") (i) fails to plead

25

the circumstances of fraud with particularity under Rule 9(b), (ii) fails to state a claim for

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1

retaliation under 31 U.S.C. § 3730(h), and part of her claim is time-barred, (iii) lacks standing to bring common law claims in a *qui tam* action where the government has declined to intervene, and (iv) fails to state a claim for discharge in violation of public policy. Defendants submit the following Memorandum in support of their Motion.

**MEMORANDUM**

## I.   INTRODUCTION

### A.   The Complaint

Dr. Zemplenyi is an ophthalmologist who, until resigning in November 2007, was employed by Defendant Group Health Permanente ("GHP").   Despite having been an employee "for nearly twenty years," Am. Compl. ¶ 61, this complaint betrays that Dr. Zemplenyi lacks even a basic awareness of the organizational and financial operations of her former employer, and puts forth no facts that would support a federal False Claims Act ("FCA") action.   It is no surprise, then, that the United States Government, after investigating the allegations, declined to intervene on its own behalf in this action.   *See* Dkt. 10.   The dearth of factual underpinning for her claims demonstrates that this action is a transparent attempt to use the threat of the FCA's serious penalties to leverage resolution of Dr. Zemplenyi's garden-variety but meritless employment claims.

In brief, Dr. Zemplenyi alleges that the performance of allegedly medically unnecessary cataract surgeries at Group Health resulted in the submission of false claims to the federal government, in violation of the FCA.   *See* Am. Compl. ¶¶ 88-99 (alleging violations of 31 U.S.C. § 3929(a)(1), (2) & (3)).   Despite the fact she worked as an ophthalmologist and herself performed cataract surgeries at Group Health "for nearly twenty years," her complaint is wholly lacking in detail as to any claims actually submitted to the government pursuant to this alleged scheme, however.   In fact, her complaint does not

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

2

1  identify a <u>single claim</u> submitted by any Defendant to the government, much less identify any

2  claim's supposed falsity.

3       Dr. Zemplenyi also asserts that she suffered retaliation as a result of her critique of

4  cataract surgeries performed at Group Health.  Although she resigned from employment, she

5  alleges she was "constructively discharged" in November 2007 because "she could no longer

6  appropriately care for GHP patients" due to "pervasive harassment and persecution."  Am.

7  Compl. ¶ 87.  She also maintains that, during her employment, she was the subject of a

8  "retaliatory transfer" from the Central Clinic to the GHC Federal Way clinic in April 2006.

9  *Id.* ¶¶ 69-70.   She claims that this was unlawful retaliation under the FCA's whistleblower

10 protection provisions, 31 U.S.C. § 3730(h), and also asserts a claim for wrongful discharge in

11 violation of Washington public policy.

12      Finally, Dr. Zemplenyi asserts common law claims for unjust enrichment and common

13 law fraud. *Id.* ¶¶ 105-14.

14      **B.**   **The Federal False Claims Act**

15      The FCA imposes liability on any person or entity that knowingly submits a false or

16 fraudulent claim for payment to the United States Government, including the Medicare and

17 Medicaid programs.  To this end, the FCA creates liability for any person, who, *inter alia*,

18 "(1) knowingly presents, or causes to be presented, to an officer or employee of the United

19 States Government . . . a false or fraudulent claim for payment or approval; (2) knowingly

20 makes, uses, or causes to be made or used, a false record or statement to get a false or

21 fraudulent claim paid or approved by the Government; . . . and (3) conspires to defraud the

22 Government by getting a false or fraudulent claim allowed or paid."  31 U.S.C. § 3729(a)(1)-

23 (3).[1]

24 _____

25 [1] The Fraud Enforcement and Recovery Act ("FERA") of 2009 (P.L. No. 111-21) amended
   certain provision in the FCA, as did the more recent Patient Protection and Affordable Care

26 Act (P.L. 111-148).  The version of the FCA applicable to Dr. Zemplenyi's action, however,

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

3

1      The whistleblower or "qui tam" provisions of the FCA allow private parties

2  ("relators") with inside information about fraud to bring a civil action in the name of the

3  government to recover damages against a person who has defrauded the government. *Id.*

4  § 3730(b)(1).  The complaint is initially filed under seal, during which time the government

5  investigates the allegations and determines whether to "intervene" in the matter and take over

6  the action itself, or decline intervention, in which case the relator may elect to pursue the

7  action without the government's assistance.  Here, the government declined to intervene and

8  Dr. Zemplenyi has elected to pursue the case on her own.

9      The FCA was enacted during the Civil War to deter what was viewed as widespread

10 fraud by government contractors who were submitting inflated invoices and shipping faulty

11 goods to the government. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265–66 (9th

12 Cir. 1996).  As the Ninth Circuit explained:

13
        In furthering this goal, the Act attaches liability, not to underlying fraudulent
14      activity, but to the "claim for payment."  What constitutes the FCA offense is
        the knowing presentation of <u>a claim that is either fraudulent or simply false</u>.
15
   *Id.* (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)) (emphasis added).
16
   "The False Claims Act, then, <u>focuses on the submission of a claim</u>, and does not concern itself
17
   with whether or to what extent there exists a menacing underlying scheme." *United States ex*
18
   *rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (emphasis added).
19
20      Indeed, the existence of a false claim has been described as the "sine qua non" or the

   "cornerstone" of FCA liability. *Id.* (citing *United States ex rel. Clausen v. Lab. Corp. of Am.*,
21
   290 F.3d 1301, 1311 (11th Cir. 2002)); *United States ex rel. Johnson v. Univ. of Rochester*
22
   *Med. Ctr.*, -- F. Supp. 2d --, 2010 WL 598655, *4 (W.D.N.Y. Feb. 18, 2010).  Therefore, in
23  _____

24 is the version in existence at the time that the claims implicated by her complaint were
   presented to the government, a time period that precedes these recent FCA amendments.
25 *United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1031 (9th Cir. 1998);
   *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 948 (1997).
26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1    order to state a claim for an FCA violation, the relator, at the very least, must identify an

2    actual claim that was false.  *Clausen,* 290 F.3d at 1311–12.  As discussed below, Dr.

3    Zemplenyi has failed to do so in her complaint.

4           The FCA also contains a whistleblower protection provision, which makes it illegal

5    for an employer to "discharge[], demote[], suspend[], threaten[], harass[], or in any manner

6    discriminate[] against [an employee] in the terms and conditions of employment . . . because

7    of lawful acts done by the employee . . . in furtherance of an action under this section,

8    including investigation for, initiation of, testimony for, or assistance in an action filed or to be

9    filed under this section."  31 U.S.C. § 3730(h).[2]  A claim under Section 3730(h) is available

10   only against actual employers of a whistleblower and, to state a claim, the whistleblower must

11   allege that she was engaged in actions in furtherance of bring a *qui tam* action under the FCA,

12   that her employer knew of such actions, and retaliated against her as a result.

13   **II.    ARGUMENT**

14
         **A.    The FCA Liability Claims Are Not Pled with Particularity Under Rule**
15             **9(b)**

16          In all averments of fraud, Rule 9(b) requires that the plaintiff "state with particularity

17   the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  As the Ninth Circuit

18   has explained, "[a]verments of fraud must be accompanied by 'the who, what, when, where,

19   and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106

20   (9th Cir. 2003) (citing *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)).  Thus, "mere

21   conclusory allegations of fraud are insufficient."  *Moore v. Kayport Package Express, Inc.,*

22   885 F.2d 531, 540 (9th Cir. 1989).  It is well-settled that Rule 9(b) applies to FCA allegations.

23   *Bly-Magee v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001).

24

25   ───────────────
     [2]   This statutory language was changed by the FERA amendments to the FCA, but those
26   amendments are not applicable to this action. *See* note 1, *supra.*

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1   In an FCA case, the relator must also specify why the false statement is material to the

2   payment decision of the government. *United States v. Bourseau*, 531 F.3d 1159, 1170-71 (9th

3   Cir. 2008). Violation of laws or regulations alone does not create a cause of action under the

4   FCA, and so simply alleging that a provider has submitted claims that violate legal or

5   regulatory prohibitions (*i.e.* are not covered by public payment programs) is insufficient. For

6   example, as the Second Circuit observed in *United States ex rel. Mikes v. Straus*, 274 F.3d

7   687, 697 (2d Cir. 2001), "a claim for reimbursement made to the government is not legally

8   false simply because the particular service furnished failed to comply with the mandates of a

9   statute, regulation or contractual term." *See also Hopper*, 91 F.3d at 1266 (9th Cir. 1996)

10   ("The FCA is far narrower. It requires a false claim."); *Clausen,* 290 F.3d at 1311 (dismissing

11   complaint under Rule 9(b) because, among other reasons, the FCA does not create liability for

12   mere violations of government regulations).

13   The Ninth Circuit has held that in order to satisfy Rule 9(b), allegations of fraud must

14   be "specific enough to give defendants notice of the <u>particular</u> misconduct which is alleged to

15   constitute the fraud charged so that they can defend against the charge and not just deny that

16   they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)

17   (emphasis added). Other courts have described in similar fashion the heightened pleading

18   requirements applicable to FCA actions. For example, in an often cited opinion, the First

19   Circuit stated:

20   [A] relator must provide details that identify <u>particular false claims</u> for
21   payment that were submitted to the government. In a case such as this, details
       concerning the <u>dates of the claims</u>, the <u>content of the forms or bills submitted</u>,
22   their identification numbers, the <u>amount of money charged to the government</u>,
       <u>the particular goods or services</u> for which the government was billed, the
23   <u>individuals involved in the billing</u>, and the length of time between the alleged
       fraudulent practices and the submission of claims based on those practices are
24   the types of information that may help a relator to state his or her claims with
       particularity. These details do not constitute a checklist of mandatory
25   requirements that must be satisfied by each allegation included in a complaint.

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

6

1

> However . . . we believe that some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b).

2

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232-33 (1st Cir.

3

2004) (internal citations and quotations omitted) (emphasis added).

4

As noted above, the *sine qua non* of FCA liability is the presentation of a claim that is

5

false. *Clausen,* 290 F.3d at 1310; *see also id. at* 1311–12 ("[I]f Rule 9(b) is to be adhered to,

6

some indicia of reliability must be given to support the allegation of *an actual false claim* for

7

payment being made to the Government.") (emphasis in original).   As such, courts have

8

consistently held that a complaint alleging FCA violations must, at the very least, identify the

9

false claims actually submitted to the government.  *See Aflatooni*, 314 F.3d at 997 ("It seems

10

to be a fairly obvious notion that a False Claims Act suit ought to require a false claim.").[3]

11

As a federal district court recently explained, "a relator cannot circumscribe the Rule 9(b)

12

pleading requirements by alleging a fraudulent scheme in detail and concluding, that as a

13

result of the fraudulent scheme, false claims must have been submitted." *United States ex rel.*

14

*Polansky v. Pfizer, Inc*, 2009 WL 1456582, *5 (E.D.N.Y. May 22, 2009) (citing *United States*

15

*ex rel. Rost v. Pfizer, Inc.,* 507 F.3d 720, 731 (1st Cir. 2007)).[4]   Dr. Zemplenyi's Amended

16

Complaint suffers from precisely these defects, and thus must be dismissed.

17

18

19

20

[3]   *See also United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir.

21

2003), *cert. denied*, 540 U.S. 968 (2003), *and reh'g denied*, 540 U.S. 1097 (2003) (affirming dismissal under 9(b) where the complaint failed to identify a false statement made to obtain

22

payment); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003) ("The failure to identify specific parties, contracts, or fraudulent acts requires dismissal."); *United States ex*

23

*rel. Butler v. Magellan Health Servs., Inc.*, 101 F. Supp. 2d 1365, 1369 (M.D. Fla. 2000) ("Plaintiff does plead a fraudulent scheme of conduct which may well be prohibited by law.

24

However, Plaintiff pleads no specific occurrences of a false claim. . . .   [T]he absence of specific allegations of fraudulent false claims is determinative.").

25

[4]   *See also United States ex rel. Sikkenga v. Regence BlueCross of Utah,* 472 F.3d 702, 727

26

(10th Cir. 2006); *Karvelas,* 360 F.3d at 232; *Clausen,* 290 F.3d at 1311.

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite  1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

1    ### *1.     The Complaint Fails to Differentiate Among Defendants*

2    To satisfy Rule 9(b), a complaint alleging fraud must differentiate among the

3    defendants, identifying each defendant's specific role in the alleged fraud.  *See United States*

4    *ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 192 (5th Cir. 2009) (complaint failed to allege

5    hospital-physician conspiracy to submit false claims as there was no specification as to

6    hospital's actions, intent or vicarious liability); *United States ex rel. Brooks v. Lockheed*

7    *Martin Corp.*, 423 F. Supp. 2d 522, 527 (D. Md. 2006) ("The second amended complaint also

8    lumps all of the defendants together without identifying the person, or even the corporation,

9    making the alleged misrepresentations.   In FCA cases, the identities of those making the

10   misrepresentations is crucial to the complaint.").

11   Here, Dr. Zemplenyi provides no specification whatsoever of the role that any of the

12   seven named Defendants played in the alleged submission of false claims to the government.

13   She simply alleges, without differentiating among the parties: "In connection with

14   <u>Defendants' conduct</u> described in detail above, from at least 2002 through the present,

15   <u>Defendants</u> have submitted hundreds if not thousands of claim forms, data reports, and/or

16   other documents containing or reflecting false claims for medically unnecessary and

17   inappropriately documented cataract surgeries."  Am. Compl. ¶ 60 (emphasis added).  *See*

18   *also id.* ¶¶ 89, 93 & 97 (alleging FCA violations generically for all "Defendants").   This

19   "indiscriminate[] group[ing] all of the individual defendants into [a] wrongdoing monolith" is

20   clearly prohibited by Rule 9(b).  *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1443 (S.D. Cal.

21   1988).

22   ### *2.     The Complaint Fails to Identify Any False Claims*

23   Even more striking is the Amended Complaint's failure to identify a single claim

24   allegedly submitted to the government in furtherance of the alleged fraudulent scheme.  As

25   the language from paragraph 60 quoted immediately above demonstrates, Dr. Zemplenyi does

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1   not even appear to know what documentary form the allegedly false claims took, as she

2   identifies "claim forms, data reports, and/or other [unspecified] documents" as potential

3   candidates for false claims submissions.  She also notes, with no further elaboration, that she

4   "is personally aware of at least 10 individual cases resulting in false claims from within just

5   the past few years."  Am. Compl. ¶ 60.  These allegations beg the question of what constitutes

6   the false claims that support her *qui* tam action.  For example, was the false claim submission

7   a Medicare Advantage bid document or data report? ¶¶ 24-33.  If so, what aspect of the

8   document constituted a "claim for payment" under the FCA?  What aspect of the document

9   was false?  Or, was the false claims submission related to the "10 individual cases"?  There is

10   no specification whatsoever of any claim submitted to any government program for any one

11   of these cases, nor is there any specification of the allegedly false or fraudulent content of any

12   such claim.  *See, e.g., Johnson*, 2010 WL 598655, at *3 ("The difficulty, however, lies in

13   plaintiffs' glaring failure to even allege that bills for any of those procedures were ever

14   presented to Medicare/Medicaid for payment.").  Without a false claim, there is simply no

15   cause of action under the FCA.  *Id.* ("The [FCA] statute attaches liability, not to the

16   underlying fraudulent activity or to the government's wrongful payment, but to the claim for

17   payment.") (internal quotations omitted) (emphasis added).

### 3.   *The Amended Complaint Fails to Allege the Particulars of Any False Claim*

20   As Dr. Zemplenyi has failed to identify any false claims, it comes as no surprise that

21   she also fails to provide the details of any false claim submission required by Rule 9(b).

22   Despite working as a GHP ophthalmologist for over 20 years, she does not identify a single

23   patient who allegedly underwent an inappropriate cataract procedure, nor does she provide the

24   details of any "claim" that could have accompanied such a service,[5] such as: the date of the

---

[5] While beyond the pleadings, it is nonetheless instructive to note that Group Health is largely
a provider of capitated healthcare services, meaning that GHC receives a fixed periodic fee to

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

9

1    claim, the entity submitting the claim, the amount of the claim, the physician performing the

2    service, the service billed, and the federal health care program that was billed.  Her reference

3    to ten unspecified "cases resulting in false claims" certainly does not provide the  "who, what,

4    when, and where" particulars—she does not even specify that any of these ten cases resulted

5    in the submission of a claim to Medicare or Medicaid, much less what about any such claim

6    was "false."  *See* Am. Compl. ¶ 60.

7           Accordingly, having utterly failed to satisfy baseline pleading requirements under

8    Rule 9(b), Dr. Zemplenyi's First, Second and Third Causes of Action under 31 U.S.C.

9    § 3729(a)(1)–(3) must be dismissed.[6]  To hold otherwise would countermand the important

10   purpose behind Rule 9(b) of preventing "strike suits and fishing expeditions":

11          In addition to providing notice that enables defendants to prepare meaningful
12          defense to charges of fraud, the particularity requirement of Rule 9(b) serves the
            purposes of, *inter alia*, preventing conclusory allegations of fraud from serving as
13          a basis for strike suits and fishing expeditions, and protecting defendants from
            groundless charges that may damage their reputations.  Without a description of
14

_____

15   provide all covered healthcare services to an enrollee, including Medicare enrollees, who are
16   the typical recipients of cataract surgery. For such individuals, there is no "claim" for
     payment submitted to Medicare for an individual service such as a cataract surgery.  The
17   failure of Dr. Zemplenyi's complaint to recognize this reality renders her complaint's premise
     entirely implausible, and thus not even compliant with Rule 8(a).  *Ashcroft v. Iqbal*, -- U.S. --
18   , 129 S.Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

19   [6] Dr. Zemplenyi's Third Cause of Action, for FCA conspiracy under 31 U.S.C. § 3729(a)(3),
20   fails for the additional reason that the intra-corporate conspiracy doctrine bars claims for a
     conspiracy among related corporate entities or between corporations and their own employees
21   or officer.  "Under the intracorporate conspiracy doctrine, which has been applied in the FCA
     context, a corporation cannot conspire with its own officers while the officers are acting in
22   their official capacity."  *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 376 F. Supp.
     2d 617, 651-52 (E.D. Va. 2005) (internal quotations omitted).   In addition, a parent
23   corporation is incapable of conspiring with its subsidiaries.   *Copperweld Corp. v.*
     *Independence Tube Corp.*, 467 U.S. 752, 768 (1984). *See also Pinhas v. Summit Health, Ltd.*,
24   894 F.2d 1024, 1033 (9th Cir. 1989) ("employees . . . cannot conspire with their employer
25   corporations"); Brooks, 423 F. Supp. 2d at 528 (applying *Copperweld* to dismiss FCA
     conspiracy claim brought against subsidiaries and their parent corporation).

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite  1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

an actual fraudulent billing, Defendant is forced to search its records for evidence to prove it did not commit fraud, releasing Relator from the burden of proving that fraud was actually committed.

*Unites States ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 88 (D. Conn. 2006) (holding that FCA complaint failed to satisfy Rule 9(b)).

**B.**   **Dr. Zemplenyi Fails To State a Claim for Retaliation Under the FCA, and Part of Her Claim Is Time-Barred**

*1.  FCA Retaliation Claims May Only Be Asserted Against Employers*

Dr. Zemplenyi asserts her Fourth Cause of Action, for violation of the "retaliation" provision of the FCA, against all Defendants, even though only one—Group Health Permanente—was her actual employer.  Am. Compl. ¶ 14.  The FCA statute is clear that retaliation claims lie only against a whistleblower's "employer," as it provides a cause of action to "any <u>employee</u> who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her <u>employer</u> because of lawful acts done by the employee on behalf of the employer or others in furtherance of an action under this section . . . ."  31 U.S.C. § 3729(h) (emphasis added).  *See also Mruz v. Caring, Inc.*, 991 F. Supp. 701, 709 (D.N.J. 1998) ("Everything about the plain language of section 3730(h) reflects a legislative intent to operate exclusively in the area of the employment relationship.").

GHC, Group Health Options Inc., KPS Health Plans, and Group Health Northwest are not alleged to have ever employed Dr. Zemplenyi during the relevant time period.  In addition, individual supervisors are not "employers" under the FCA or otherwise, and thus Dr. Zemplenyi's claim against Dr. Lee fails as a matter of law.  *See* Am. Compl. ¶ 17 ("Dr. Lee has had direct oversight of the work of Dr. Zemplenyi, and was directly responsible for her constructive discharge.").  *See also, e.g., United States ex rel. Lockyer v. Hawaii Pacific Health,* 490 F. Supp. 2d 1062, 1085–86 (D. Haw. 2007) ("Although the Ninth Circuit has not addressed the issue of whether an individual supervisor is an "employer" under the FCA, the

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

11

1  vast majority have answered in the negative . . . The Court sees no reason to depart from this

2  reasoning to attach employer liability to an individual supervisor under Section 3730(h).").

3  *See also United States ex rel. Yesudian v. Howard Univ*, 270 F.3d 969, 972 (D.C. Cir. 2001)

4  (holding that the word "employer" does not apply to a supervisor in his individual capacity for

5  FCA retaliation claims, and noting that "[e]ven in cases arising under Title VII, which

6  explicitly defines 'employer' as including 'any agent of such a person' ... we ... have held that

7  the word 'employer' does not cover a supervisor in his personal capacity."). As to Dr. Clark,

8  Dr. Zemplenyi does not allege he was her supervisor, *see* Am. Compl. ¶ 18, and even if she

9  did, any retaliation claim against him would fail for the same reason her claim against Dr. Lee

10 fails.

### 2. Retaliation Claim Relative to "Retaliatory Transfer" to Federal Way Is Time-Barred

13      The United States Supreme Court has clarified that the FCA does not itself contain a

14 statute of limitations relative to retaliation claims under § 3730(h). *Graham County Soil &*

15 *Water Conserv. Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 419 (2005). Therefore,

16 courts "borrow the most closely analogous state time limit." *Id.* Moreover, "[t]he likely

17 analogous state statutes of limitations virtually all start to run when the cause of action

18 accrues—in retaliation actions, when the retaliatory action occurs." *Id*. In Washington, the

19 applicable statute of limitations is contained in RCW 4.16.080(2), a "catchall" statute that sets

20 a three-year limitations period for claims for injuries to persons. *See United States ex rel.*

21 *Marchese v. Cell Therapeutics*, 2007 WL 2572347, *3 (W.D. Wash. Sept. 6, 2007)

22 ("[defendant] agrees that the three-year limitations period provided by RCW 4.16.080(2)

23 would apply to Plaintiff's Section 3730(h) claim if Washington's statute of limitations

24 governs [instead of New Jersey's]."). *See also Conway v. Std. Insur. Co.*, 23 F. Supp. 2d

25 1199, 1200 (E.D. Wash. 1998) (applying three year limitations period of RCW 4.16.080(2) to

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

12

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1    federal civil rights claim because the federal statute did not contain its own limitations

2    period).

3         Based upon this three-year limitations period, any retaliation claims that accrued on or

4    before May 6, 2006 are time-barred, as Dr. Zemplenyi's original complaint was filed on May

5    6, 2009. *See* Dkt. 4.   Dr. Zemplenyi's allegations of retaliatory transfer to the Federal Way

6    clinic (which, as discussed above, can only be asserted against her employer, GHP) are thus

7    time-barred, as those events occurred on or before "April 2006." *See* Am. Compl. ¶ 69

8    ("Despite her tenure and established policies to the contrary, in April 2006, Dr. Zemplenyi

9    was transferred to the Federal Way clinic.").

10        ### 3.   *Remaining FCA Retaliation Claim Against GHP Fails to Allege*
11        *Facts to Support a Claim*

12        Finally, Dr. Zemplenyi's only possible remaining FCA retaliation claim—*i.e.*, a claim

13   against GHP for alleged retaliation occurring on or after May 6, 2006—is subject to dismissal

14   because it does not contain "enough facts to state a claim to relief that is plausible on its face."

15   *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*,

16   -- U.S. --, 129 S.Ct. 1937, 1949 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

17   (2007)).   A court "do[es] not necessarily assume the truth of legal conclusions merely because

18   they are cast in the form of factual allegations." *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071

19   (9th Cir. 2009).

20        In order to state a claim for retaliation under 31 U.S.C. § 3730(h), a complaint must

21   contain sufficient non-conclusory factual content to demonstrate that: (1) the employee

22   engaged in an activity protected under the FCA; (2) the employer knew that the employee

23   engaged in a protected activity; and (3) the employer discriminated against the employee

24   because she engaged in protected activity. *Moore v. Calif. Inst. of Tech. Jet Propulsion Lab.*,

25

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511   F: (206) 622-8986

275 F.3d 838, 845 (9th Cir. 2002); *Hopper*, 91 F.3d at 1268-69.[7]  Here, Dr. Zemplenyi has

failed to plead any facts that constitute a plausible claim for retaliation, much less a factual

nexus between an alleged retaliatory action and "protected activity" under the FCA.

        **a.**       **The Complaint Does Not Allege Dr. Zemplenyi Engaged in Protected Activity Under the FCA**

      To state a retaliation claim under the FCA, "[t]he plaintiff must be investigating matters which are calculated, or reasonably could lead, <u>to a viable FCA action</u>." *Hopper*, 91 F.3d at 1269 (emphasis added).  Allegations that an employee complained about a practice, or encouraged an employer to cease a practice, are not the same as investigating fraud under the FCA.  *Id.* ("Hopper was merely attempting to get the School District to comply with Federal and State regulations.  She was not trying to recover money for the government."); *United States ex rel. Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999) ("It would not be enough to simply report the concern of a mischarging to the government to one's supervisor."); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) (reporting concerns to superiors was not protected activity under FCA); *McKenzie v. Bellsouth Telecom.*, 219 F.3d 508, 517 (6th Cir. 2000) (Plaintiff's "repeated

---

[7] An employee must plead facts that, if true, would support such elements in order to maintain the balance Congress intended between making employees feel more secure in reporting fraud to the government and reducing false assertions of fraud:

> Some employees will cry 'fraud' to make pests of themselves, in the hope of being bought off with higher salaries or more desirable assignments. Others will perceive the disappointments of daily life as 'retaliation' and file suits that have some settlement value because of the high costs of litigation and the possibility of error.  Careless cries of fraud are less culpable, but may be no less costly than extortionate ones.  Dealing with false alarms drains time from productive activities.  Section 3730(h) does not throw one set of interests to the winds in order to protect the other; it is a compromise between them.

*Neal v. Honeywell, Inc.*, 33 F.3d 860, 863 (7th Cir. 1994).

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

14

1   refusals to falsify repair records and numerous complaints to supervisors are not sufficiently

2   connected to exposing fraud or false claims against the federal government.").

3        Courts will dismiss FCA retaliation claims where the relator alleges nothing more than

4   complaint of regulatory non-compliance.   For example, in *Brandon v. Anesthesia & Pain*

5   *Management Associates, Ltd.*, 277 F.3d 936 (7th Cir. 2002), the Seventh Circuit concluded

6   that an anesthesiologist who informed fellow physicians that he was concerned about billing

7   practices and contacted Medicare for information about billing rules did not engage in

8   conduct "in furtherance of" a *qui tam* action.   *Id.* at 944-45.   Similarly, as the District of

9   Columbia Circuit noted: "Mere dissatisfaction with one's treatment on the job is not, of

10  course, enough.   Nor is an employee's investigation of nothing more than his employer's

11  noncompliance with federal or state regulations….To be covered by the False Claims Act, the

12  plaintiff's investigation must concern 'false or fraudulent' claims." *Yesudian*, 153 F.3d at 740

13  (quoting 31 U.S.C. § 3729(a)) (emphasis added).

14       Here too, Dr. Zemplenyi has not alleged (nor can she allege) that she engaged in

15  protected activity under the FCA.   She simply alleges that she "expressed her opinion" (to

16  unidentified persons) that a six-month preoperative physician observation period was "too

17  long, was a violation of Medicare requirements, and a potential danger to patients" (¶ 67), and

18  that she "continued to discuss and object to GHP physicians performing cataract surgeries

19  outside Medicare compliance" during 2005 and 2006 (¶ 68).   While Dr. Zemplenyi may have

20  been advocating for regulatory compliance, "[c]orrecting regulatory problems may be a

21  laudable goal, but one not actionable under the FCA in the absence of actual fraudulent

22  conduct." *Hopper*, 91 F.3d at 1269.

23       Nowhere, for example, does Dr. Zemplenyi allege that she informed GHP of any false

24  claims or false statements made to the government in connection with cataract surgeries, nor

25  does she allege facts suggesting that she engaged in an investigation that "was calculated, or

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

reasonably could lead, to a viable FCA action." *Id.* At best, she alleges that she turned over files to the "Group Health Medicare compliance officer" when she suspected Medicare regulatory criteria were not being met, and reported her concerns to her supervisor, Dr. Lee (¶¶ 70, 72). These actions are not tantamount to exposing fraud or knowing submission of false claims to the government. As the Seventh Circuit noted in *Brandon*, "simply trying to convince the [physicians] to comply with the Medicare billing regulations.... is usually not protected by the FCA." 277 F.3d at 945. *See also Hopper*, 91 F.3d at 1269; *Moore*, 91 F.3d at 845 (plaintiff engaged in protected conduct when he called NASA Inspector General's office and stated that he "suspected fraud at [his employer's office]") (emphasis added); *Johnson*, 2010 WL 598655 at *6 (FCA retaliation claim dismissed under Rule 12(b)(6) where plaintiffs failed to allege that complaints to supervisory physicians were made in furtherance of a *qui tam* action or that they were part of an investigation into Medicare/Medicaid fraud).

### b.   Complaint Does Not Allege Facts Demonstrating GHP Knew of Protected Conduct or Retaliated Against Dr. Zemplenyi Because of Such Conduct

Even if Dr. Zemplenyi alleged that she engaged in protected activity under the FCA, her Amended Complaint fails to plead facts that GHP knew she was engaging in such conduct. "Unless the employer is aware that the employee is investigating fraud, the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)." *Hopper*, 91 F.3d at 1269 (emphasis added). Although specific awareness of the FCA is not required, the employee must give an indication that she was investigating the employer for defrauding the government. *Id.* at 1270 (emphasis added); *Moore*, 275 F.3d at 847. This requires an employee to assert facts that demonstrate that he or she put his employer on notice of the "distinct possibility" of FCA litigation. *Hopper*, 91 F.3d at 1269; *Yesudian*, 153 F.3d at 743; *Childree v. UAP/GA AG Chem, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996); *Neal*, 33 F.3d at 864; *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 188

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

16

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1 (3d Cir. 2001). "Merely grumbling to the employer about job dissatisfaction or regulatory

2 violations does not satisfy the requirement—just as it does not constitute protected activity in

3 the first place." *Yesudian*, 153 F.3d at 743.

4   Moreover, where an employee's job duties include the very same conduct that is

5 alleged to be "protected activity" under the FCA, courts require additional facts that the

6 investigation went beyond the employee's assigned tasks in order to demonstrate that the

7 employer was on notice of the conduct. *Eberhardt*, 167 F.3d at 868; *United States ex. rel.*

8 *Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514 (10th Cir. 1996); *Brandon*, 277 F.3d at

9 945. For example, in *Brandon*, the Seventh Circuit concluded that an anesthesiologist's job

10 duties included ensuring that billing practices complied with Medicare rules and regulations,

11 and thus "the fact that [he] was alerting his supervisors to the possibility of their

12 noncompliance with the rules would not necessarily put them on notice that he was planning

13 to take a far more aggressive step and bring a *qui tam* action against them or report their

14 conduct to the government." *Id.*

15   Here, as in *Brandon*, Dr. Zemplenyi alleges she informed Defendants of perceived

16 non-compliance with Medicare coverage requirements for cataract surgeries. As an

17 ophthalmologist who performed cataract surgeries, and who attended meetings where

18 performance of such surgeries was discussed, *see* Am. Compl. ¶ 55, discussing such issues

19 with her employer was clearly part of her job duties and, as such, would not alone put GHP on

20 notice that she "performed either an 'investigation for,' or provided 'assistance in' this or any

21 other FCA action." *Ramseyer*, 90 F.3d at 1523 (citing 31 U.S.C. § 3730(h)). For example,

22 Dr. Zemplenyi does not allege that she informed GHP that she intended to use such non-

23 compliance in furtherance of litigation, that she was going to report the non-compliance to

24 government officials, or even that such noncompliance was fraudulent or illegal. *See id.*;

25 *Robertson*, 32 F.3d at 952; *cf. Moore*, 275 F.3d at 847. Indeed, no allegation could possibly

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

17

1    support the notion that GHP was aware of Dr. Zemplenyi's "protected activity," because her

2    actions were not "protected activity" under the FCA in the first place. *See McKenzie*, 219 F.3d

3    at 518.  *See also Lockyer*, 490 F. Supp. 2d at 1984-85 ("In cases where courts have found an

4    employer had notice that the employee was engaging in protected conduct, the plaintiff had

5    produced evidence that he or she voiced a concern about <u>fraud</u> on the federal government or

6    references a <u>qui tam FCA action</u> to the employer.") (emphasis added).

7         Finally, the Amended Complaint does not adequately plead that GHP retaliated

8    "because of" the protected activity.  Here, any action taken by GHP with respect to Dr.

9    Zemplenyi could not constitute retaliation because it was not on notice of her engagement in a

10   protected activity.  *Hopper*, 91 F.3d at 1270 ("[Defendant] may have engaged in retaliation

11   for Hopper's activities, but the record does not show any connection to the FCA.").

12   Additionally, GHP never fired or demoted Dr. Zemplenyi, and the alleged "constructive

13   discharge" occurred four months after she was presented with a performance improvement

14   plan, to which she did not allegedly have an opportunity to respond.  Am. Compl. ¶¶ 84 & 87.

15        In short, even Dr. Zemplenyi's remaining FCA retaliation claim against GHP relative

16   to her departure in November 2007 fails to state a claim, because she alleges no facts

17   suggestive of protected conduct under the FCA, GHP's knowledge of that conduct, or any

18   adverse action taken because of such conduct.

19   **C.    <u>Dr. Zemplenyi's Common Law Claims Should Be Dismissed Because She</u>**

20        **<u>Lacks Standing To Assert Them</u>**

21        Dr. Zemplenyi's claims for common law fraud (Am. Compl. ¶¶ 105–110) and unjust

22   enrichment (¶¶ 111-14) are barred because she lacks standing to assert them.  As a relator

23   pursuing an FCA claim where the government has declined to intervene, Dr. Zemplenyi

24   litigates, in effect, though "a partial assignment of the Government's damages claim."

25   *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).

26   While the "FCA permits a relator alleging <u>an FCA violation</u> to meet the 'injury in fact'

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

18

1   standing requirement. . . . the FCA 'does not give relators the right to assert common law

2   claims on behalf of the United States.'"   *United States ex rel. Phipps v. Comprehensive*

3   *Comm. Dev. Corp.*, 152 F. Supp. 2d 443, 452 (S.D.N.Y. 2001) (quoting *United States ex rel.*

4   *Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D. Mass. 2000)) (emphasis added).

5        Dr. Zemplenyi does not allege, nor could she allege, that she suffered an injury in fact

6   (*i.e.*, that she was defrauded by the Defendants).   *See Walsh*, 98 F. Supp. 2d at 149.

7   Therefore, "[b]ecause she has not been assigned the right to bring any such claim," she lacks

8   standing to assert these common law claims, and thus they must be dismissed.   *Phipps*, 152

9   F. Supp. 2d at 452.   *See also United States ex rel. Barrett v. Columbia/HCA Healthcare*

10  *Corp.*, 251 F. Supp. 2d 28 (D.D.C. 2003) (relator lacked standing to pursue conspiracy and

11  unjust enrichment claims in FCA case because "[t]he common law claims are personal to the

12  United States and the Relators have not alleged that they suffered any injury in fact, nor could

13  they.").

14        **D.**     **The Court Should Decline To Exercise Supplemental Jurisdiction Over**
            **Realtor's Wrongful Discharge Claim, and No Wrongful Discharge Claim**
15           **Is Recognized Where Adequate Statutory Remedies Exist and Where**
            **Underlying Fraud Allegations Fail To Satisfy Rule 9(b)**
16

17             *1.  The Court Should Not Exercise Supplemental Jurisdiction*

18        Federal district courts may exercise supplemental jurisdiction over state claims that are

19  "so related to claims in the action within such original jurisdiction that they form part of the

20  same case or controversy under Article III of the United States Constitution."   28 U.S.C.

21  § 1367(a).   Courts have the discretion to decline to exercise supplemental jurisdiction,

22  particularly where the district court dismisses all claims over which it has original

23  jurisdiction.   *See* 28 U.S.C. § 1367(c).   *See also, e.g., Carnegie-Mellon Univ. v. Cohill*, 484

24  U.S. 343, 350 (1988) (a federal law claim belongs in state court "when the federal-law claims

25  have dropped out of the lawsuit in its early stages and only state-law claims remain"); *Cook*,

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

19

1  *Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

2  Dismissal is particularly appropriate when the state law issues have not been briefed or argued

3  in federal court. *Wren v. Sletten Constr. Co.*, 654 F.2d 529, 536 (9th Cir. 1981); 16 Moore's

4  Federal Practice § 106.66[3][a] (3d ed.).  In general, "[n]eedless decisions of state law should

5  be avoided both as a matter of comity and to promote justice between the parties, by

6  procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*,

7  383 U.S. 715, 726 (1966).

8       Here, no circumstances support the exercise of supplemental jurisdiction.   Dr.

9  Zemplenyi's only federal claims (*i.e.*, the FCA claims) fail under Rule 9(b) and/or Rule

10  12(b)(6), and there is no diversity among the parties.  In addition, her wrongful discharge

11  claim has not yet been briefed or argued in federal court, and raises issues of state law

12  appropriate for adjudication in state court.

13              ***2.   Washington Does Not Recognize Tort of Wrongful Discharge***
              ***Where Other Means Exist to Vindicate Public Policy Concerns***

14

15       Even if this Court retains jurisdiction, the wrongful discharge claim is subject to

16  immediate dismissal because Washington courts do not permit plaintiffs to bring this common

17  law claim where adequate statutory remedies exist.   "The clear trend among courts is to

18  declare that an employee has no common-law wrongful discharge claim if the employee has

19  adequate statutory remedies."   Restatement (3d) of Employment Law, § 4.01 cmt. d.

20  Washington is no exception.  For example, in *Hollenback v. Shriner's Hospital for Children*,

21  149 Wn. App. 810, 206 P.2d 337 (2009), the court of appeals found that the district court

22  properly dismissed plaintiff's wrongful discharge claim because she was unable to show that

23  "other means for promoting the policy [against discharging an employee for engaging in

24  oppositional activity] are inadequate." *Id.* at 827, 206 P.2d at 345.  Similarly, in *Hochberg v.*

25  *Lincare, Inc.*, 2008 WL 1913853 (E.D. Wash. April 28, 2008) the court dismissed a wrongful

26  discharge claim because the plaintiff had "a statutory remedy under the WLAD [Washington

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM
                                                                    20

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1  Law Against Discrimination] . . . Defendant correctly states that the Washington Supreme

2  Court has not permitted a plaintiff to allege a sex discrimination claim under both the WLAD

3  and the common-law tort of wrongful discharge in violation of public policy—the claims are

4  entirely duplicative." *Id.* at *8 (citing *Roberts v. Dudley*, 140 Wn.2d 58, 993 P.2d 901

5  (2000)). *See also Korslund v. Dyncorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 181 125 P.3d

6  119 (2005) ("As a matter of law, the plaintiffs have not satisfied the jeopardy element of the

7  tort of wrongful discharge in violation of public policy because there is an adequate

8  alternative means [under the federal Energy Reorganization Act] of promoting the public

9  policy on which they rely.").

10       Here, Dr. Zemplenyi has a statutory remedy available to her under the FCA relative to

11  her alleged constructive discharge.   While the Amended Complaint fails to state a viable

12  retaliation claim under the FCA (as discussed above), she is precluded from bringing both a

13  statutory and a common law tort claim for wrongful discharge arising out of the same

14  conduct.

### 3. *In the Absence of Pleading a Viable FCA Claim, Dr. Zemplenyi Cannot Bring a Wrongful Discharge Claim*

17       Even if Dr. Zemplenyi were permitted to pursue a separate tort claim for wrongful

18  discharge, that claim would fail for the additional reason that she has failed to adequately

19  plead an underlying violation of the FCA, the public policy that she seeks to vindicate through

20  this claim.   The rationale for such a conclusion is summarized in the Sixth Circuit's opinion

21  in *Yuhasz v. Brush Wellman, Inc.* 341 F.3d 559 (6th Cir. 2003), a case where a *qui tam* relator

22  brought a separate claim for wrongful discharge in violation of the public policy of Ohio.

23  There, the court found that the relator failed to state a claim under the FCA because her

24  allegations were insufficiently particular under Rule 9(b).   The relator conceded that "if he is

25  unable to demonstrate a violation of the FCA, he may not bring a claim for discharge in

26  violation of the public policy therein." *Id.* at 568.  He argued, however, that dismissal of the

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

21

1   wrongful discharge claim was not appropriate because "this public policy is also

2   independently and more broadly embodied in the common law of Ohio." *Id.*   The court

3   rejected this argument, finding that "the only applicable laws and regulations that Yuhasz

4   alleges he was directed to violate are the FCA and the Federal Acquisition Regulations." *Id.*

5   at 569 (internal quotations omitted).  Because "the complaint fails to state a claim with respect

6   to either of these authorities," the court concluded that the "companion common-law claim for

7   relief fails as a matter of law." *Id.* (internal quotations omitted).

8        Here, too, Dr. Zemplenyi's Amended Complaint fails to state a claim for retaliation

9   under § 3730(h).

10        **E.        With Prejudice Dismissal of the Amended Complaint Is Warranted**

11        While dismissing a complaint with leave to amend is generally within the Court's

12  discretion, the Court should dismiss with prejudice all claims where amendment would be

13  futile. *See* Fed. R. Civ. P. 15(a); *Eminence Capital v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

14  Cir. 2003) (leave to amend should be granted unless complaint cannot be saved by

15  amendment). *See also United States ex rel. Gale v. Raytheon Co.*, 2009 WL 3378976, *4

16  (S.D. Cal. Oct. 19, 2009) (FCA complaint dismissed with prejudice based upon futility of

17  amendment under Rule 9(b)); *Phipps*, 152 F. Supp. 2d at 455 (dismissing with prejudice in

18  part because relator "has not proffered any evidence to suggest that she could even cure the

19  Rule 9(b) deficiencies in her complaint").  Here, given that Dr. Zemplenyi was an employee

20  of Group Health for over twenty years, and has already amended her complaint once upon the

21  government's notice of declination, it is clear that she has alleged all the facts that she has in

22  her possession to support her claims.  Thus, amendment would be futile and her Amended

23  Complaint should be dismissed with prejudice.

24

25

26

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM
22

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

IV.    **CONCLUSION**

For the foregoing reasons, the Court should GRANT Defendants' Motion and DISMISS the entire Amended Complaint with prejudice.

DATED this 27th day of April, 2010.

BENNETT BIGELOW & LEEDOM, P.S.

By      s/ David B. Robbins
      David B. Robbins, WSBA 13628
      Renee M. Howard, WSBA 38644
      Bennett Bigelow & Leedom, P.S.
      1700 Seventh Avenue, Suite 1900
      Seattle, WA 98101-1397
      Phone:  206-622-5511
      Fax:  206-622-8986
      **Email:**  drobbins@bbllaw.com
      **Email:**  rhoward@bbllaw.com
    Attorneys for Defendants

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

23

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite  1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 27, 2010, I caused to be electronically filed the foregoing **MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT THEREOF** and this appended **CERTIFICATE OF SERVICE** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Counsel for Plaintiff United States of America *ex rel.*:

    <u>U.S. ATTORNEY'S OFFICE (SEATTLE)</u>:

        Peter Angus Winn – Peter.Winn@usdoj.gov

Counsel for Plaintiff Eva Zemplenyi, MD, *Relator*

        Benjamin R. Justus – brj@lybeckmurphy.com
        James Paul Murphy – jpm@lybeckmurphy.com

    DATED this 27th day of April, 2010.

                                s/ David B. Robbins

{1834.00006/M0131396.DOC; 7}

MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES
9(b) AND 12(b)(6) AND MEMORANDUM IN SUPPORT
C09-0603 RSM

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986