1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

9

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| United States of America, *ex rel.* Eva Zemplenyi, M.D., and Eva Zemplenyi, M.D., individually, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| Group Health Cooperative, Group Health Permanente, Group Health Options, Inc., KPS Health Plans, Group Health Northwest, Michael Lee, M.D., Terrence Clark, O.D., John Does 1-20, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

No. C-09-0603-RSM

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULES 9(b) AND 12(b)(6)**

**NOTED FOR HEARING: MAY 21, 2010**

19

## **INTRODUCTION**

20

21

22

23

24

25

26

Defendants' motion to dismiss misstates the standards of pleading required in this *qui tam* case.  FRCP Rule 9(b) applies only to certain averments of fraud, with well-established exceptions for claims pursued under the False Claims Act (FCA).  Where, as here, the scheme to defraud is complex and documentary evidence is secreted away from the plaintiff and the public, Rule 9(b) specificity is not strictly required.  The general notice pleading standards of Rule 8 apply to Relator Dr. Eva Zemplenyi's wrongful discharge and FCA retaliation claims. Defendants' arguments erroneously rely almost entirely on cases decided at summary judgment

1  or later.  These cases have little or no relevance to a Rule 12 motion on the pleadings where all

2  allegations must be accepted as true and all inferences drawn in Plaintiffs' favor.

3      Plaintiffs' detailed factual allegations more than adequately meet applicable pleading

4  standards.  The amended complaint thoroughly describes a complex fraud scheme arising from

5  Defendants' practice of ordering and performing unnecessary and non-compliant cataract

6  surgeries. Doc. 12, Amended Complaint, ¶¶21-60.  Defendants submitted false contract bid

7  documents, data reports and other statements to the Centers for Medicare and Medicaid Services

8  (CMS) in order to obtain fraudulently inflated payments under Medicare Advantage (MA)

9  plans. Id., ¶¶60, 70.

10

11      Dr. Zemplenyi reported the unnecessary and non-compliant surgeries.  As a result,

12  Defendants retaliated against her and wrongfully discharged her in violation of the FCA and

13  Washington public policy. Id., ¶¶66-87.  As is common, many documents relevant to prove the

14  allegations are available to Plaintiffs only with the benefit of discovery.  Even without

15  discovery, Dr. Zemplenyi has documented at least 10 specific instances of unnecessary

16  surgeries resulting in false claims. Id., ¶¶60, 70.  This is well more than is required at the

17  pleadings stage.  Defendants' motion must be denied.  If Defendants' motion is not denied in its

18  entirety, Plaintiffs must be allowed leave to plead more specifically.

19

20

21                              **ARGUMENT:**

22      **EACH FALSE CLAIMS ACT AND WRONGFUL TERMINATION CAUSE OF
       ACTION IS ADEQUATELY PLEADED.**

23

24      **I.      Pleading Standards Applicable to Plaintiffs' Allegations.**

25      **A. Rule 12 Standards.**

26      When considering the sufficiency of allegations on a Rule 12(b)(6) motion to dismiss,

   the court must view the allegations in a light most favorable to the non-moving party, must

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)  - 2**

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1   presume all factual allegations of the complaint to be true, and must draw all reasonable

2   inferences in favor of the nonmoving party. <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561

3   (9th Cir. 1987).  The issue is not whether a claimant will ultimately prevail, but "whether the

4   claimant is entitled to offer evidence to support the claims," even if "it may appear on the face

5   of the pleadings that recovery is very remote and unlikely." <u>Scheuer v. Rhodes</u>, 416 U.S. 232,

6   236 (1974).  At the pleadings stage, a complaint cannot be dismissed "unless it appears beyond

7   
8   doubt that [the non-moving party] can prove no set of facts in support of [his or her] claim

9   which would entitle [him or her] to relief." <u>Id.</u> (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46

10  (1957)).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of

11  
12  facts consistent with the allegations in the complaint." <u>Bell Atlantic Corp. v. Twombly</u>, 550

13  U.S. 544, 563 (2007).

14  **B.  Standards Applied to False Claims Act Claims.**

15  While FRCP 9(b) may apply to FCA *qui tam* claims, a "pleading is sufficient under

16  Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare

17  an adequate answer from the allegations.'" <u>Semegen v. Weidner</u>, 780 F.2d 727, 735 (9th Cir.

18  
19  1985)(citation omitted).  While allegations of the time, place and nature of the alleged

20  fraudulent activities are sufficient, <u>Semegen</u>, 780 F.2d at 735, these specific allegations are not

21  required where a plaintiff otherwise substantiates her claims:

22          Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of
            the alleged fraud in order to place the defendants on notice of the precise
23          misconduct with which they are charged, and to safeguard defendants against
            spurious charges of immoral and fraudulent behavior.  It is certainly true that
24          allegations of "date, place or time" fulfill these functions, but nothing in the rule
            requires them.  Plaintiffs are free to use alternative means of injecting precision
25          and some measure of substantiation into their allegations of fraud.

26  <u>Seville Indus. Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791 (3rd Cir.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)  - 3

Lybeck◊Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1 1984); see also U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)("…to

2 plead with particularity the circumstances constituting fraud for a False Claims Act §

3 3729(a)(1) claim, a relator's complaint…may…survive by alleging particular details of a

4 scheme to submit false claims paired with reliable indicia that lead to a strong inference that

5 claims were actually submitted.")  "Thus, it is inappropriate to focus exclusively on the fact that

6 Rule 9(b) requires particularity in pleading fraud.  This is too narrow an approach and fails to

7 take account of the general simplicity and flexibility contemplated by the rules." Michaels Bldg.

8 Co. v. Ameritrust Co., 848 F.2d 674, 679 (6th Cir. 1988)(citations and footnote omitted).  "Rule

9 9(b) was not intended to require a plaintiff to know every detail before he or she could plead

10 fraud." U.S. v. Kensington Hospital, 760 F.Supp. 1120, 1125 (E.D.Pa. 1991).

11 Moreover, Rule 9(b)'s heightened pleading requirements apply only to "averments" of

12 fraud rather than to the claim as a whole. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105

13 (9th Cir. 2003).  Allegations of non-fraudulent conduct need satisfy only the ordinary notice

14 pleading standards of Rule 8(a). Ibid.  Scienter may be pled generally under both the FCA and

15 Rule 9(b). Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1477 (2nd Cir. 1995).  To state a claim

16 under the FCA, "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).

17 Defendants  have overstated the requirement of specificity at the initial pleadings stage.

18 Cases decided on summary judgment, such as U.S. ex rel. Clausen v. Laboratory Corporation of

19 America, 290 F.3d 1301, 1311 (11th Cir. 2002), cert. denied, 537 U.S. 1105 (2003), do not

20 control.  Clausen does not stand for the proposition that identification of specific claims

21 presented is necessarily required to satisfy Rule 9(b) at the motion to dismiss stage.[1]  At the

---

[1] As the court in Grubbs, *supra*, 565 F.3d at188 fn 19, explained:  "The Seventh, Third, and Ninth Circuits have also cited Clausen for the proposition that a relator must allege details of a false claim actually submitted to the Government, but the appeals in these circuits were all brought at the summary judgment stage, after discovery had been completed. See U.S. ex rel. Crews v. NCS Healthcare of Ill., Inc., 460 F.3d 853 (7th Cir.2006); U.S. ex rel.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)  - 4

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1    pleadings stage, the "failure to allege patient names and the exact dates that claims were

2    submitted to the government...is not fatal to a claim under the FCA." Hill v. Morehouse

3    Medical Associates, Inc., 2003 WL 22019936, at *4 fn 8 (11th Cir. August 15,

4    2003)(unpublished decision; attached as Exhibit A); see also U.S. ex rel. Walker v. R & F

5    Properties of Lake County, Inc., 433 F.3d 1349, 1353 (11th Cir. 2005).

6

7    **C.  Pleading Standard When Evidence of Fraud is Possessed by Defendants.**

8          The Rule 9(b) heightened pleading standard is applied less stringently when specific

9    "factual information [about the fraud] is peculiarly within the defendant's knowledge or

10   control." Hill v. Morehouse, *supra*, at *3.  Rule 9(b) standards are relaxed when the plaintiff

11   lacks access to all facts necessary to detail her claim. Corley v. Rosewood Care Ctr., Inc., 142

12   F.3d 1041, 1051 (7th Cir. 1998); see also Emery v. Am. Gen. Fin., Inc., 134 F.3d 1321, 1323

13   (7th Cir. 1998); U.S. ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th

14   Cir. 1999).   In applying Rule 9(b), courts should be "sensitive" to situations in which

15   "sophisticated defrauders" may "successfully conceal the details of their fraud." In re

16   Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3rd Cir. 2002)(internal citations

17   omitted).  In corporate fraud cases courts recognize that discovery is necessary where specific

18   evidence is within a defendant's possession and control. U.S. ex rel. Lee v. SmithKline

19

20   Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001); Wool v. Tandem Computers, Inc., 818

21   F.2d 1433, 1439 (9th Cir. 1987).

22

23       In these situations, Rule 9(b)'s requirements can be fulfilled by pleading facts on

24   information and belief if they are "facts inaccessible to the plaintiff." Bankers Trust Co. v. Old

25

26   Quinn v. Omnicare Inc., 382 F.3d 432 (3d Cir.2004); U.S. ex rel. Aflatooni v. Kitsap Physicians Serv., 314 F.3d
     995 (9th Cir.2002). Requiring detailed evidence of a false claim post-discovery is not necessarily indicative of
     what details these courts would require at the pleading stage." Further, the Aflatooni court allowed that even if the
     relator did not "come to court with a claim in hand," he could rely on "sufficiently detailed circumstantial evidence

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)**  - 5

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1  Republic Ins. Co., 959 F.2d 677, 684 (7th Cir. 1992); see also U.S. ex rel.  Kennedy v. Aventis,

2  512 F. Supp. 2d. 1158, 1167 (N.D.Ill. 2007)(denying motion to dismiss FCA claim where

3  "specific facts…regarding particular claims were and are not likely within relators' reach," and

4  "[g]iven the significant proportion of medical care in this country that is financed by Medicare

5  and Medicaid, relators have drawn a reasonable inference that claims for reimbursement…were

6  submitted to the federal government…for payment.").

7

8      Courts recognize that cases of alleged fraud on Medicare by unnecessary procedures

9  should be allowed discovery of specific evidence to support the pleaded claims. See, e.g., U.S.

10 ex rel. Downy v. Corning Inc., 118 F.Supp.2d 1160, 1173 (D.N.M. 2000), overruled on other

11 grounds, U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702 (10th

12 Cir. 2006).  This has held even where the relator "failed to provide a single example of an

13 instance in which a physician was induced to request an unnecessary [] test." Downy, 118

14 F.Supp.2d at 1173.  The Downy court held that:

15

16         …some form of limited discovery would probably be necessary to allow Relator
           to provide such specific examples, if they exist, since information concerning the
17         physicians who requested [] tests from Defendants' laboratories is undoubtedly
           in Defendants' possession rather than the public domain.  The Court is of the
18         opinion such arguments are, therefore, more appropriately handled at the
           summary judgment stage if facts to support Relator's claims fail to materialize.
19         Therefore, the Court will find Relator's complaint satisfies the requirements of
           Rule 9(b), even without specific examples of false claims submitted to the
20         United States.

21

22 Id., at 1173 (citations omitted; alterations supplied).

23     Here, Dr. Zemplenyi has alleged the submission of annual MA bids, capitated payments

24 and other documents evidencing false claims.  The specific evidence underlying these claims is

25 within Defendants' exclusive control.  It is regarded as proprietary and secreted away from the

26

---

to establish that the defendant actually submitted a false claim." Alfatooni, 314 F.3d at 1002

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)  - 6**

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

public domain. Doc. 12, Amended Complaint, at ¶32. Further, CMS has indicated that it will not disclose such information absent court orders or special requests. Ibid. Dr. Zemplenyi worked as a staff ophthalmologist. She had no direct role in submitting claims, or CMS bids, patient data, and other actuarial information. Dr. Zemplenyi knew of unnecessary and noncompliant cataract surgeries. She reported these Defendants' Medicare Compliance Officer who confirmed that CMS billing requirements were being violated. Id., ¶70. Her pleadings are sufficient to give Defendants an opportunity to understand, investigate, and defend.

**D. General Allegations are Sufficient When Pleading Complex Fraud Schemes Occurring Over a Period of Time.**

Rule 9(b)'s heightened pleading requirement is applied less stringently when the "fraud allegedly occurred over a period of time." Hill v. Morehouse, *supra*, at *5 fn 6; see also Corley, *supra*, 142 F.3d at 1050, Fujisawa Pharm. Co. v. Kapoor, 814 F.Supp. 720, 726 (N.D.Ill. 1993). In these situations, the plaintiff is not required to provide "a detailed allegation of all facts supporting each and every instance of submission of a false claim." U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F.Supp.2d 258, 268 (D.D.C. 2002); see also Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)(Where general time frame and nature of fraudulent conduct was identified, it was *"not fatal to the complaint that it [did] not describe in detail a single specific transaction ... by customer, amount, and precise method."*); U.S. ex. rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F.Supp.2d. 1017, 1049 (S.D.Tex. 1998)("The basic framework, procedures, the nature of fraudulent scheme, and the financial arrangements and inducements among the parties and physicians that give rise to Relator's belief that fraud has occurred have been alleged with specificity; *Plaintiffs are entitled to discovery before being required to list every false claim, its dates, the individuals responsible, and why each patient was not eligible for Medicare.*")(emphasis added).

1    In <u>U.S. ex rel. Pogue v. American Healthcorp., Inc.</u>, 914 F.Supp. 1507, 1508-09

2   (M.D.Tenn. 1996), the court upheld a complaint generally alleging a scheme to defraud:

3           …the Court finds that the complaint adequately describes Defendants' allegedly
4           fraudulent scheme to defraud the United States of Medicare and Medicaid
            monies. Although no specific dates or [defendant's] employees are identified,
5           the complaint alleges that the hospital participated in a systematic, fraudulent
            scheme, spanning the course of twelve years; thus, reference to a time frame and
6           to "[defendant]" generally is sufficient. As this Court noted in its denial of [co-
7           defendant's] similarly-couched motion to dismiss the Second Amended
            Complaint, "[r]equiring Plaintiff to refer to the specific instances underlying
8           each Medicare and Medicaid claim submission that he claims was fraudulent in
            his [complaint] would undermine Rule 8's admonishment to keep pleadings
9           simplistic."

10   <u>Pogue</u>, 977 F.Supp. at 1333 (some alteration supplied).

11    In the matter of <u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>, 478

12   F.Supp.2d 164 (D. Mass. 2007), the court sustained *qui tam* claims based on allegations that

13   drug manufacturers reported falsely inflated prices for various drugs to a published

14   compendium while knowing that medical providers would be reimbursed based on the inflated

15   price when submitting claims for prescribing and administering the drugs to California's

16   Medicaid program.  In denying a Rule 12 motion to dismiss *qui tam* claims under the California

17   False Claims Act, the court held that "[g]iven the sheer volume of drug reimbursements

18   involved in this case, Rule 9(b) will be satisfied if the complaint alleges the basic framework,

19   procedures, and the nature of fraudulent scheme that give rise to California's belief that false

20   claims have been submitted." 478 F.Supp.2d at 172.

21    Here, as detailed in the amended complaint, Dr. Zemplenyi has alleged a complex fraud

22   scheme occurring over a number of years, evidenced in part by documentation of a dramatically

23   rising number of cataract surgeries being performed annually on a static patient population

24   enrolled in Defendants' MA plans. Doc. 12, Amended Complaint, ¶¶53-59.  She has adequately

pleaded the basic framework, procedures, and the nature of fraudulent scheme giving rise to her belief that many false claims have been submitted, and she has specifically pleaded at least 10 individual cases which resulted in false claims and provided evidence of 6. Id., ¶¶21-60, 70; see also discussion at Part III.D., *infra*.   Under these circumstances, Plaintiffs are simply not required to provide allegations supporting each and every instance of false claim submissions.

**E.  Only Notice Pleading Required for FCA Section (h) Retaliation Claims.**

"[T]he heightened pleading requirements of Rule 9(b) do not apply to FCA retaliation claims. Instead, a FCA retaliation claim must meet the Rule 8(a) notice pleading standard." Mendiondo v. Centinela Hosp. Medical Center, 521 F.3d 1097, 1103 (9th Cir. 2008).

**II.     Plaintiffs Adequately Plead *Qui Tam* Claims (31 U.S.C. § 3729(a)(1),(2) and (3)).**

**A.  FCA Broadly Reaches "All Types of Fraud" That Might Cause Loss to Government.**

The FCA is interpreted broadly and it "reaches all types of fraud, without qualification, that might result in financial loss to the Government." U.S. v. Neifert-White Co., 390 U.S. 228, 232 (1968); Peterson v. Weinberger, 508 F.2d 45, 52 (5th Cir.) cert. denied, 423 U.S. 830 (1975); Harrison v. Westinghouse, 176 F.3d 776, 786 (4th Cir. 1999). "[A] false claim may take many forms, the most common being a claim…*provided in violation of contract terms, specification, statute, or regulation.*" Mikes v. Straus, 274 F.3d 687, 697 (2nd Cir. 2001), citing S. Rep. No. 99-345, at 9, reprinted in 1986 U.S.C.C.A.N. 5266, 5274 (emphasis in original).[3]

**B.  Allegations of Particular False Claim of Presentation Are Not Required.**

Defendants erroneously argue that allegations about the presentation of specific false

---

[3] Even proof of specific losses is not required for a *qui tam* claim.  The civil monetary penalties under the FCA function as liquidated damages to allow recovery where the damages are difficult to quantify. U.S. v. Halper, 490 U.S. 435 (1989).  In order to obtain statutory penalties, a *qui tam* plaintiff does not need to plead and prove the specific damages suffered by the government. Rex Trailer Co. v. U.S., 350 U.S. 148, 152-53 (1956).

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)  - 9

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1  claims are absolutely required in *qui tam* cases.  No such specificity is required for FCA claims

2  against one who uses a "false ... statement to get a false or fraudulent claim paid or approved by

3  the Government," 31 U.S.C. § 3729(a)(2), or who "conspires to defraud the Government by

4  getting a false or fraudulent claim allowed or paid." § 3729(a)(3).  One main case cited by

5  Defendants, <u>U.S. ex rel. Karvelas v. Melrose-Wakefield Hospital</u>, 360 F.3d 220 (1st Cir.) <u>cert.</u>

6

7  <u>denied</u>, 125 S.Ct. 59 (2004), was substantially overturned by the U.S. Supreme Court's opinion

8  in <u>Allison Engine Co., Inc. v. U.S. ex rel. Sanders</u>, 553 U.S. 662, 128 S.Ct. 2123 (2008).  The

9  <u>Allison</u> Court concluded that a "person must have the purpose of getting a false or fraudulent

10  claim 'paid or approved by the Government' in order to be liable under § 3729(a)(2)." 128 S.Ct.

11  at 2128.  However, the Court made clear that "[t]his does not mean…that § 3729(a)(2) requires

12  proof that a defendant's false record or statement was submitted to the Government." 128 S.Ct.

13  at 2129.  The Court applied similar standards for subsection (a)(3) claims. <u>Id.</u>, at 2130-2131.

14

15      After <u>Allison Engine</u>, the 1st Circuit recognized that its prior reading of the FCA

16  presentation and submission requirements was  too broad:

17      <u>Allison Engine</u> thus forecloses, in subsection (a)(2) and (a)(3) cases, a broad
      reading of portions of our <u>Karvelas</u> and <u>Rost</u> holdings. For example, *in*
18      *Karvelas, which involved a subsection (a)(1) claim, we said that "the defendant's*
      *presentation of false or fraudulent claims to the government is a central element*
19      *of every [FCA] case,"* <u>Karvelas</u>, *360 F.3d at 232 (emphasis added), and that a*
      *complaint must "provide details that identify particular false claims for payment*
20      *that were submitted to the government," <u>id.</u>, repeated in <u>U.S. ex rel. Rost v.</u>*
      <u>*Pfizer, Inc.*</u>, *507 F.3d 720, 731 (1st Cir. 2007). That is true only of cases under*
21      *subsection (a)(1), which expressly includes a presentment requirement.*
22

23  <u>U.S. ex rel. Gagne v. City of Worcester</u>, 565 F.3d 40, 46 fn 7 (1st Cir. 2009)(citation altered;

24  emphasis added).   Clearly, no specific allegations of claim presentation are required for

25  Plaintiffs' § 3729(a)(2) and (a)(3) claims.

26

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)**  - 10

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

**C. False Certifications and False Statements Are Actionable As Alleged.**

False certifications of compliance with applicable laws and regulations create liability under the FCA when certification is a prerequisite to obtaining a government benefit. <u>Hopper v. Anton</u>, 91 F.3d 1261, 1266 (9th Cir. 1996); <u>see also</u> <u>U.S. ex. rel. Thompson v. Columbia/HCA Healthcare Corp.</u>, 125 F.3d 899, 902 (5th Cir. 1997); <u>U.S. ex rel. Fallon v. Accudyne Corp.</u>, 880 F.Supp. 636, 638 (W.D.Wis. 1995). Even impliedly false certifications—documents submitted seeking payment but containing no express representations of regulatory compliance—are actionable under the FCA. <u>See</u>, <u>e.g.</u>, <u>Ab-Tech Construction, Inc. v. U.S.</u>, 31 Fed.Cl. 429 (Fed.Cl. 1994), <u>aff'd</u>, 57 F.3d 1084 (Fed.Cir. 1995)(unpublished table decision).

Moreover, in <u>Thompson</u>, *supra*, the 5th Circuit confirmed that that the FCA imposes liability not only on any person who submits a false or fraudulent *claim* for payment, but also on a person who knowingly makes a false *statement* in order to get a false or fraudulent claim paid. 125 F.3d at 902, <u>citing</u> 31 U.S.C. § 3729(a)(2). Summarizing the relator's allegations relating to fraudulent cost reports, the court explained:

> Thompson alleged that, as a condition of their participation in the Medicare program, defendants were required to certify in annual cost reports that the services identified therein were provided in compliance with the laws and regulations regarding the provision of healthcare services. He further alleged that defendants falsely certified that the services identified in their annual cost reports were provided in compliance with such laws and regulations. Thus, Thompson fairly alleged that the government's payment of Medicare claims is conditioned upon certification of compliance with the laws and regulations regarding the provision of healthcare services, including the anti-kickback statute and the Stark laws, and that defendants submitted false claims by falsely certifying that the services identified in their annual cost reports were rendered in compliance with such laws and regulations.

<u>Thompson</u>, *supra*, at 902. Similar to Dr. Zemplenyi's case, the inpatient hospital services at issue in <u>Thompson</u> were paid by Medicare on a fixed per-patient basis regardless of actual costs incurred in treating the patient. <u>See</u> <u>U.S. ex. rel. Thompson v. Columbia/HCA Healthcare</u>

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)  - 11

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1  Corp., 20 F.Supp.2d. 1017, 1023-1024 (S.D.Tex. 1998).  The district court held that "Plaintiffs

2  have stated a claim for violation of the FCA by Defendants' alleged false certification that the

3  Medicare services identified in the annual hospital cost reports complied with the laws and

4  regulations dealing with the provision of healthcare services." Id., at 1046.[4]

5

6  Various Medicare statutes and regulations, many of which are cited in Dr. Zemplenyi's

7  complaint, require strict adherence to standards of medical necessity and compliance with the

8  False Claims Act and other measures which prohibit fraud, inaccuracy, untruthfulness and

9  waste. See Doc. 12, Amended Complaint ¶¶27-34; see also 42 C.F.R. § 422.504(a),(h),(l).  In

10  fact, certification by Defendants' corporate representatives as to the accuracy of information

11  presented is generally required as a condition of monthly payments from CMS.  Dr. Zemplenyi

12  has adequately alleged the mechanisms by which false certifications, MA bids, data reports, and

13  other fraudulent statements of Defendants have inevitably led to inflated and undeserved

14  payments from CMS to Defendants. Id., ¶¶21-33.  Although Dr. Zemplenyi is not required to be

15  more specific at this stage, she has alleged at least ten specific instances of unnecessary medical

16

17  services resulting in false claims within the past few years. Id., ¶¶60, 70.

18     **D.     Receiving Payment for Medically Unnecessary Services Actionable.**

19

20  In Lee v. SmithKline Beecham, *supra*, the 9th Circuit held the district court erred by

21  overlooking allegations in a complaint charging that the defendant violated the FCA by seeking

22  payment for medically worthless services.  The district court had construed relator Lee's

23  complaint as presenting only a "false certification" case.  Because the forms at issue contained

24

25  [4] By contrast, in Hopper, *supra*, cited by Defendants here, there was no false certification: "The forms do not contain any certification concerning regulatory compliance. In fact, the [Individuals with Disabilities Education

26  Act] does not require funding recipients to certify their compliance with federal laws and regulations." Hopper, 91 F.3d at 1267. Instead, they contained general assurances that the filer would comply with applicable federal law in the future. Moreover, the *qui tam* claim in Hopper, was decided upon a motion for summary judgment, not a pleading standard. Id., at 1265

no specific certification language, the district erroneously reasoned that Lee had failed to allege false certification. <u>Lee</u>, 245 F.3d at 1053.  On appeal, the 9th Circuit reversed, noting that "[i]n an appropriate case, knowingly billing for worthless services or recklessly doing so with deliberate ignorance may be actionable under § 3729, regardless of any false certification conduct." <u>Ibid.</u>

In <u>Mikes</u>, <i>supra</i>, 274 F.3d 687 (decided upon summary judgment), the 2nd Circuit drew a distinction between the decision to render a medical service <i>vel non</i> and the quality of the service rendered:

> Medical necessity ordinarily indicates the level-not the quality-of the service. For example, <i>the requisite level of medical necessity may not be met where a party contends that a particular procedure was deleterious or performed solely for profit</i>, see <u>U.S. ex rel. Kneepkins v. Gambro Healthcare, Inc.</u>, 115 F.Supp.2d 35, 41-42 (D.Mass. 2000) (<i>procedures chosen solely for defendants' economic gain are not "medically necessary" as required by claim submission form</i>), or where a party seeks reimbursement for a procedure that is not traditionally covered, <u>see</u> <u>Rush v. Parham</u>, 625 F.2d 1150, 1156 (5th Cir. 1980) (upholding state's exclusion of experimental medical treatment from definition of "medically necessary" services under Medicaid).

<u>Id.</u>, at 698 (emphasis added).  Based on this difference, the court determined that "as Mikes challenges only the quality of defendants' spirometry tests and <i>not the decisions to order this procedure for patients</i>, she fails to support her contention that the tests were not medically necessary." <u>Id.</u>, at 699 (emphasis added). [5]

While Defendants' reliance on summary judgment cases is largely misplaced, <u>Mikes</u> is instructive to the extent that it recognizes a viable FCA claim when a profit-motivated decision to order a medically unnecessary medical procedure is itself challenged as fraudulent.  Here, Dr. Zemplenyi has alleged precisely such conduct. Doc. 12, Amended Complaint, ¶¶34-60, 66-68,

---

[5] In addition, the <u>Mikes</u> court held that "in submitting a Medicare reimbursement form, a defendant implicitly certifies compliance with § 1395y(a)(1)(A)," which provides that Medicare only covers services that are reasonable and necessary for the diagnosis of treatment of injury. 274 F.3d at 702.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)**  - 13

70-74.  While not necessary at the pleadings stage, she has specific evidence to demonstrate at least 10 cases from within the past several years where medically unnecessary, potentially deleterious surgeries were performed, including a patient who in July 2007 was subjected to a needless and reckless cataract surgery on his right eye despite his congenital blindness in the same eye. Id., ¶¶60, 70.[6]  She has alleged that Defendants submitted documents containing or reflecting false claims in connection with each of these cases. Id., ¶70.  These allegations more than satisfy pleading requisites.

**E.  Individualization Not Required For Corporate Fraud.**

In cases of corporate fraud, when false information is conveyed in "group-published" information, it is reasonable to presume that these are the collective actions of the corporate

---

[6] Out of due concern for patient confidentiality and privacy, Dr. Zemplenyi has not attached to her pleadings medical records or provided specific details regarding these individual cases.  However, records and information regarding six cases were previously provided to the Government pursuant to 31 U.S.C. §§ 3730(e)(4)(B) and 3730(b)(2).  These cases were also reviewed by Defendants' Medicare compliance officer who agreed that medically unnecessary cataract surgeries were performed. Amended Complaint, ¶70.  For the court's reference, below are details regarding these cases:

  After a most recent preoperative exam on 10/31/05, Patient "CS" underwent surgery of the left eye on 3/2/06, and surgery on the right eye on 5/25/06.  Both surgeries were performed without a prior standardized determination of visual function status; without Snellen visual acuity of 20/50 or worse; without glare testing; with an excessive interval between preoperative exam and surgery; and with insufficient time to assess the need for a second surgery.

  After a most recent preoperative exam on 2/15/06, Patient "MI" underwent surgery of the left eye on 5/25/06.  Surgery was performed without a prior standardized determination of visual function status; without Snellen visual acuity of 20/50 or worse; without glare testing; and with an excessive interval between preoperative exam and surgery.

  After a most recent preoperative exam on 2/8/06, Patient "BW" underwent surgery of the right eye on 5/22/06.  Surgery was performed without a prior standardized determination of visual function status; without Snellen visual acuity of 20/50 or worse; without glare testing; without refraction; and with an excessive interval between preoperative exam and surgery.

  After a most recent preoperative exam on 3/10/05, Patient" NB" underwent surgery of the left eye on 4/26/05.  Surgery was performed without a prior standardized determination of visual function status; without Snell visual acuity of 20/50 or worse; and without glare testing.

  After a most recent preoperative exam on 2/6/06, Patient "ML" underwent surgery of the right eye on 5/19/06.  Surgery was performed without a prior standardized determination of visual function status; without Snell visual acuity of 20/50 or worse; without glare testing; and with an excessive interval between preoperative exam and surgery.

  After a most recent preoperative exam on 12/2/05, Patient "DJ" underwent surgery of the left eye on 4/25/06, and surgery on the right eye on 5/19/06.  Both surgeries were performed without a prior standardized determination of visual function status; without Snellen visual acuity of 20/50 or worse; without glare testing; with an excessive interval between preoperative exam and surgery; and with insufficient time to assess the need for a

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)** - 14

officers. Wool, *supra*, 818 F.2d at 1439. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and, where possible, the roles of the individual defendants in the misrepresentations. Ibid. See also Pogue, *supra,* 914 F.Supp. at 1508-09 (identification of individual employees of corporate defendant not required; permitting general reference to "defendant").  In language of particular import here, the 5th Circuit in Grubbs, *supra*, said:

> Whether a doctor put the claims in motion by entering records of unprovided or unnecessary services into the hospital's standard billing system, or whether the doctor actually hit the "send" button that presents the bills to the Government, does not change the nature of the fraud. The False Claims Act recognizes this and requires only that a person knowingly "causes [a claim] to be presented." The doctor can cause the fraud by putting a fraudulent record into a system that he knows will ministerially crank out a fraudulent bill to the Government. Describing such a system serves the same purpose for pleading as naming the individual who hit the submit button.

565 F.3d at 190 fn 31 (citation omitted).

Under the circumstances pleaded, it is understandable that Dr. Zemplenyi has not yet identified each individual involved in submitting individual false claims and statements.[7]

**III.   Dr. Zemplenyi Adequately Pleaded Claim for FCA Retaliation (31 U.S.C. § 3729(h)).**

An employee must prove three elements in a § 3730(h) retaliation claim: (1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the

---

second surgery.

[7]  In response to Defendants' argument that Plaintiffs' conspiracy claim under 31 U.S.C. § 3729(a)(3) is barred by the intra-corporate conspiracy doctrine, there is a well-established exception when the defendant has a personal interest in the fraudulent acts independent of the defendant's relationship with the alleged co-conspirator corporate defendant. See Buschi v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985); Douty v. Irwin Mortg. Corp., 70 F.Supp.2d 626, 632-33 (E.D.Va. 1999).  Here, as detailed in the complaint, Dr. Lee and other individual managerial physician Defendants each had a personal stake in ordering more surgeries and inflating the RVUs generated by those under their supervision, resulting in higher personal compensation and potential promotions. Doc. 12, Amended Complaint, ¶43-46.

1   employee because she engaged in protected activity. <u>Hopper</u>, *supra*, 91 F.3d at 1269.

2   Employees need not have filed a *qui tam* suit before being protected by the FCA. <u>Childree v.</u>

3   <u>UAP/GA AG CHEM., Inc.</u>, 92 F.3d 1140, 1144, 1146 (11th Cir. 1996). "This manifests

4   Congress' intent to protect employees while they are collecting information about a possible

5   fraud, before they have put all the pieces of the puzzle together." <u>U.S. ex rel. Yesudian v.</u>

6   <u>Howard University</u>, 153 F.3d 731, 740 (D.C.Cir. 1998)(citation omitted).  Dr. Zemplenyi has

7

8   more than adequately alleged each element of a retaliation claim under the Rule 8 standard.

9       **A. Protected Activity Alleged.**

10       "[A]n employee engages in protected activity where (1) the employee in good faith

11   believes, and (2) a reasonable employee in the same or similar circumstances might believe,

12   that the employer is possibly committing fraud against the government." <u>Moore v. California</u>

13   <u>Institute of Technology Jet Propulsion Laboratory</u>, 275 F.3d 838, 845 (9th Cir. 2002).  "Specific

14

15   awareness of the FCA is not required" while the relator is "investigating matters which are

16   calculated, or reasonably could lead, to a viable FCA action." <u>Hopper</u>, *supra*, 91 F.3d at 1269.

17   The definition of "[p]rotected activity should ... be interpreted broadly." <u>Smith</u>, *supra*, 415

18   F.Supp.2d at 102-103 (citation omitted).  Even when an investigation has only a "distinct

19   possibility" of finding evidence of a FCA violation, courts are inclined to determine the activity

20   to be protected. <u>See</u> <u>Yesudian</u>, *supra*, 153 F.3d at 740.  The fact that a potential plaintiff may

21

22   ultimately fail to find such evidence does not change the analysis of his or her retaliation claim.

23   <u>Id.</u> at 740-41. "[E]ven an investigation conducted without contemplation of-or knowledge of

24   the legal possibility of-a False Claims Act suit can end up being 'in furtherance' of such an

25   action." <u>Yesudian</u>, 153 F.3d at 741; <u>see also</u> <u>Smith</u>, *supra*, 415 F.Supp.2d at 103.

26       Courts have specifically held that an investigation into fraudulent billing practices

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)** - 16

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1   constitutes protected conduct under Section 3730(h). <u>See</u> <u>Yesudian</u> at 740.  Similarly, internal

2   reporting of false claims can also constitute protected activity. <u>Id.</u>, at 741 n. 9 (citing cases).

3       In <u>Mendiondo v. Centinela Hosp.</u>, *supra*, the 9th Circuit ruled that the plaintiff had

4   engaged in FCA-protected activity where she simply alleged "that she investigated 'facts

5   relating to [defendant hospital and affiliate's] submission of false claims and false records to the

6   government.'" <u>Mendiondo,</u> 521 F.3d at 1104 (alteration supplied).   Also, "[t]he complaint

7   contain[ed] examples of practices at [defendant hospital] that Mendiondo and her co-plaintiffs

8   suspected to be fraudulent attempts to inflate Medicare reimbursements," including "numerous

9   unnecessary" medical procedures. <u>Ibid</u>.

10

11      Here, Defendants' argument that Dr. Zemplenyi "simply alleges that she 'expressed her

12  opinion,'" Doc. 15, at 15, is demonstrably incorrect.   Throughout 2005 and 2006, Dr.

13  Zemplenyi continually objected to Defendants' performing unnecessary and noncompliant

14  cataract surgeries in violation of Medicare criteria. Doc. 12, Amended Complaint, ¶¶67-69.

15  The direction to do these surgeries were given in the context of commands to increase

16  physicians' production of Relative Value Units (RVUs), which were directly tied to Medicare

17  payment for medical services. <u>Id.</u>, ¶¶47-51, 54, 55.   After Dr. Zemplenyi's objections were

18  continually ignored, and she was subject to a discriminatory transfer, she independently

19  investigated Defendants' acts and reviewed the files of several patients who had recently

20  undergone unnecessary and noncompliant surgeries. <u>Id.</u>, ¶70.    Dr. Zemplenyi then

21  communicated her concerns to Group Health's Medicare Compliance Officer, Kathy Harris. <u>Ibid.</u>

22  Ms. Harris requested that Dr. Zemplenyi provide some of the patient files for Ms. Harris' review,

23  who then independently determined that in each case reviewed Defendants had failed to comply

24  with Medicare standards for medical necessity. <u>Ibid.</u>  In September 2006, Dr. Zemplenyi again

25

26

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)** - 17

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

reported her concerns about the unnecessary and noncompliant surgeries to her supervisor, Dr. Lee. Id., at ¶¶71, 72. Immediately thereafter, Dr. Zemplenyi was subjected a variety of retaliatory and discriminatory employment actions which persisted for several months. Id., at ¶¶73-84. After Ms. Harris retired, the new Compliance Officer encouraged Dr. Zemplenyi to report Defendants' acts of retaliation to Defendants' Human Resources Department, resulting in Defendants' performing an internal investigation of the matters which concluded in October 2007. Id., at ¶¶84, 85. Just as Defendants were orchestrating her removal, she was constructively discharged. Id., at ¶¶86, 87.

Dr. Zemplenyi's allegations go well beyond mere "complaining" or "encouraging" her employers to cease their misconduct. Her acts are expressly protected by the FCA. From the facts alleged regarding her investigation, one can easily and reasonably conclude there was "distinct possibility" that she would find evidence of a FCA violation arising from Defendant's attempts to secure inflated Medicare payments. As the authorities discussed above hold, it is of no moment whether or not she simultaneously intended, contemplated-or even had knowledge of the legal possibility of-a FCA suit.

**B. Defendants Knew About Protected Activity.**

Dr. Zemplenyi adequately pleaded her investigation and reporting. She need not plead or prove that Defendants knew the specifics of her activity. The court in Smith v. Yale University, *supra*, stated:

> Since a plaintiff is not required to "know" that his or her investigation may lead to a FCA action, similarly, there can be and is no requirement that the defendant know that the employee has filed or is contemplating such an action. Yesudian, *supra*, 153 F.3d at 742; Karvelas, *supra*, 360 F.3d at 238 (holding that the defendant need not even "be aware of the existence of the FCA"). All that Defendant must have known is that Relator was engaged in protected activity-that is, investigation or other activity concerning *potentially false or fraudulent claims* that reasonably could lead to a FCA case. Yesudian, 153 F.3d at 742-43

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6) - 18

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

> (noting that "requiring a plaintiff to advise his employer that he has filed or is contemplating filing a qui tam complaint would contravene the qui tam section of the Act itself" and "frustrate ... congressional concern[s]"). *To require an express or even an implied threat of a qui tam action would impose an unrealistic requirement on employees-insisting that employees inform their employers of their intention to sue them on behalf of a "defrauded government" would eviscerate the FCA's incentives to investigate fraudulent activities*. Mikes, *supra*, 889 F.Supp. at 753.

Smith, *supra*, 415 F.Supp.2d at 105 (citations altered; emphasis added).  More important, in Mendiondo, *supra*, the 9th Circuit found this element satisfied where the plaintiff

> allege[d] she complained to [defendant hospital's] CEO, Harry Koening, about possible "civil and criminal violations." Although vague, the reference to "civil violations" can be construed to include the suspected Medicare fraud described above. Because Mendiondo complained to Koening about the suspected civil violations, [defendant hospital] was informed of Mendiondo's protected activity.

521 F.3d at 1104 (alterations supplied).

Defendants' contention that Dr. Zemplenyi was somehow required to more explicitly alert them of "fraud" falls flat.  She has pleaded directly reporting to her supervisors and to Defendants' Medicare Compliance Officer unnecessary and improper procedures correlated with Defendants' efforts at increasing revenue.  The impropriety and potential impact on Defendants' Medicare status was acknowledged.  Immediately after her supervisor learned of this report, Dr. Zemplenyi was subject to a host of adverse employment actions.  This culminated in an internal investigation by Defendants related to the improprieties.  In short, Dr. Zemplenyi has adequately pleaded that Defendants knew of her protected activity.

Defendants argue erroneously that Dr. Zemplenyi could not have placed Defendants on notice of her FCA-protected activity because investigating Defendants' violations of Medicare requirements was "clearly part of her job duties" (Doc. 15, at 17).  As the cases cited by Defendants make clear, this proposition has only been applied when the employee was specifically "assigned the task of investigating fraud within the company." *See, e.g.*, Eberhardt

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)  - 19

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   v. Integrated Design, 167 F.3d 861, 868 (4th Cir. 1999); U.S. ex rel. Ramsayer v. Century

2   Healthcare Corp.,90 F.3d 1514, 1523 (10th Cir. 1996).[8]   As a staff ophthalmologist, Dr.

3   Zemplenyi's assigned job duties involved providing eye care to patients. Doc. 12, Amended

4   Complaint, ¶¶61-65.   Her FCA-protected investigation and reporting were entirely separate,

5   independent activities in furtherance of a potential enforcement action.

6

7   **C. Dr. Zemplenyi Alleged Discrimination Because of Protected Activity.**

8        The 9th Circuit in Moore, *supra* held "that an action may be cognizable as

9   discrimination under the False Claims Act…if it is reasonably likely to deter employees from

10   engaging in activity protected under… the[] statute[]." Moore, 275 F.3d at 849 (emphasis

11   added), citing Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).

12

13        Moore discovered a problem with an antenna his employer was building for NASA and

14   a cover-up by his supervisors.  Moore reported the problems and the cover-up to NASA and his

15   employer's legal and ethics departments.  Afterwards, Moore was suggested for a transfer and

16   subjected to proposed agreement for increased supervision, and he later resigned.

17        At summary judgment, the district court ruled that no FCA retaliation claim existed

18   because his whistle-blowing was not "directly related" to a government payment. Moore, at

19   846.  The 9th Circuit reversed, holding that a jury could reasonably conclude that the cover-up

20   was intended to increase discretionary payment to Moore's employer. Ibid.  Regarding whether

21   the employer's actions constituted discrimination against Moore for protected activity, the court

22   held:

23

24

25   [8]  Brandon v. Anesthesia & Pain Mgt. Assocs., 277 F.3d 936 (7th Cir. 2002), involved a claim for the Illinois tort
     of retaliatory discharge.  The court was evaluating a hypothetical FCA claim only for purposes of determining "if

26   an adequate alternative remedy exists to vindicate the retaliatory discharge or otherwise to deter the activity that is
     inconsistent with public policy." Brandon, at 943.  Thus, although an actual FCA claim was not before the court, it
     did not foreclose the possibility, but held that "[l]ooking at all of the facts, it is unclear at best that Brandon
     engaged in activity that might have supported a suit under the FCA anti-retaliation provision." Id., at 945.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)  - 20

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1   *…the prospect of having continually to defend his right to his work, funding, job*
2   *title, reporting status, and signature authority was by itself reasonably likely to*
    *deter an employee from reporting suspected fraud.*

3   Moore, at 848 (emphasis added).[9]

4

5   In U.S. ex rel. Sarafoglou v. Weill Medical College of Cornell University, 451

6   F.Supp.2d 613, 625 (S.D.N.Y. 2006), the court denied a Rule 12 motion to dismiss a FCA

7   retaliation claim where the plaintiff physician reported a fraudulent scheme to her direct

8   supervisor.  As a result, the defendants "exclud[ed] her from meetings, solicit[ed] complaints

9   about her from other individuals…and recommend[ed] that she receive an 'administrative

10  referral' that would blemish her career." After making an internal complaint, the plaintiff was

11  reassigned to a different practice group, constituting a demotion. Ibid.

12  In Sweeney v. ManorCare Health Services, Inc., No. C-03-5320-RJB, 2006 WL

13  1042015 (W.D.Wash. April 5, 2006)(unpublished decision; attached as Exhibit B), Judge Bryan

14

15  sustained on summary judgment a FCA retaliation claim arising from suspected Medicaid

16  fraud.  Sweeney was a nursing home employee who learned that supplements and snacks

17  prescribed to patients were not being actually given to them, and questioned the practice of

18  billing for these items.  In response, the employer expressed concerns about Sweeney's

19  performance.  Sweeny accused the employer of "illegal conduct" related to the billing.

20  Sweeney investigated further, questioning several management-level employees about billing

21

22  for snacks that were not served.  The employer later alleged that Sweeney had made false

23  entries in storage logs, hired a replacement, and terminated her.  Sweeney brought a *qui tam*

24

25  _____
    [9] Defendants have again principally relied upon on cases deciding retaliation claims on summary judgment or at a
    later stage. See, e.g., Eberhart, 167 F.3d at 869 (affirming denial of judgment as a matter of law); Brandon, 277
26  F.3d at 947 (reversing judgment as a matter of law, reinstating verdict for plaintiff); Childree, 92 F.3d at 1146
    (reversing summary judgment in favor of defendant); Ramsayer, 90 F.3d at 1518 (treating motion to dismiss as
    summary judgment under Rule 56(c)); Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 194 (3rd Cir.
    2001)(affirming summary judgment for defendant).  While many of these cases were actually decided in favor of

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 9(B) AND 12(B)(6)  - 21

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

action in which the Government declined to intervene, as well as a FCA retaliation claim.

Sweeney opposed the defendant's motion for summary judgment on the retaliation claim, arguing: "1) she was engaged in protected activity by investigating and collecting information on ManorCare's billing practices for supplements and snacks, 2) she discussed her concerns with management personnel, so ManorCare had notice of her investigation, and 3) the proximity in time between Sweeney's…accusation that ManorCare was engaged in "illegal" conduct and the subsequent hiring of her replacement around a week later provides a strong inference that Sweeney's termination was in retaliation for her activity." Sweeney, at *4. The court agreed with her as to each element, and denied summary judgment. Id., at *6-8.

Dr. Zemplenyi has more than adequately pleaded that she was discharged "because of" engaging in protected activities.  In a manner akin to facts described in the cases above, after Dr. Zemplenyi reported her suspicions internally, she was subject to a host of adverse actions, including solicitations of criticisms of her performance intended to suffice as pretext for further adverse actions; proposed written agreements regarding the same; and discriminatory changes in employment practices to allow for her termination.  She was repeatedly forced to defend herself and her performance when she did not acquiesce in the scheme.  The proximity in time between Dr. Zemplenyi's September 2006 direct complaint of fraudulent practices to Dr. Lee, his inappropriate inquiry to the Compliance Officer demanding her identity, and the immediate onset of other adverse actions supports the strong inference that she was discriminated against because of engaging in protected activity.  Dr. Zemplenyi's FCA retaliation claim easily satisfies Rule 8 pleading standards.

the plaintiff, their evidentiary rulings have limited relevance at best to the present motion on the pleadings.

**IV.    Wrongful Discharge in Violation of Public Policy Adequately Pleaded.**

Dr. Zemplenyi has properly pled her wrongful discharge claim in addition to her FCA retaliation claim.[10]  In <u>Sweeney</u>, Judge Ryan held that "Washington has a clear public policy regarding the proper billing of Medicaid services..."[i]f a trier of fact finds that she was engaged in a fraud investigation of ManorCare, then clearly the state's public policy of proper Medicaid billing would be in jeopardy if employees of nursing homes were discouraged from investigating perceived fraud." <u>Sweeney</u>, at *9.

For reasons detailed in part III above, Dr. Zemplenyi has adequately alleged all elements of a claim for wrongful discharge in violation of public policy.  Obviously, Washington's "clear public policy regarding the proper billing of Medicaid services," would apply with equal force to Medicare, a coordinate federal program, and this policy "would be in jeopardy if employees…were discouraged from investigating perceived fraud." <u>Sweeney</u>, at *9.

Defendants' argument regarding the supposed preemption of common law remedies by statutory actions is incorrect.  Obviously, this Court in <u>Sweeney</u> permitted a wrongful discharge claim premised on Medicaid fraud and a FCA retaliation claim to proceed simultaneously.  The 9th Circuit similarly held that a plaintiff properly pled a state law tort cause of action for wrongful discharge in violation of public policy in conjunction with FCA retaliation. <u>See</u> <u>Mendiondo</u>, *supra*, 521 F.3d 1097; <u>see</u> <u>also</u> <u>Hoefer v. Fluor Daniel, Inc.</u>, 92 F.Supp.2d 1055 (C.D. Cal. 2000)(state law wrongful discharge actions for retaliation not preempted by FCA).

Finally, Defendants urge this Court to decline to exercise supplemental jurisdiction over the state law claim, but this argument is entirely dependent on their Rule 12 challenge to the

---

[10] In Washington, "[t]o establish a prima facie case for wrongful termination in violation of public policy, a plaintiff must show: 1) the existence of a clear public policy, 2) discouraging the conduct in which they engaged would jeopardize the public policy, 3) the public-policy-linked conduct caused the dismissal, and 4) the defendant must not be able to offer an overriding justification for the dismissal." <u>Gardner v. Loomis Armored Inc.</u>, 128

1    FCA claims. Doc. 15, at 19.  For the reasons discussed above, this challenge must fail.

2           **V.      Leave to Amend "Almost Always" Allowed.**

3           Even if the court is inclined to dismiss a complaint, leave to amend and replead is

4    virtually required.  It is an abuse of discretion to deny leave to amend unless there is sufficient

5    reason, such as "undue delay, bad faith or dilatory motive ... repeated failure to cure

6    deficiencies by [previous] amendments ... [or] futility of amendment." Foman v. Davis, 371

7

8    U.S. 178, 182 (1962).  The 9th Circuit has "consistently…held that leave to amend should be

9    granted unless the district court 'determines that the pleading could not possibly be cured by the

10   allegation of other facts.'" Lee, *supra*, 245 F.3d at1052, (citation omitted); see also Bly-Magee

11   v. California, 236 F.3d 1014 (9th Cir. 2001)(reversing and remanding to permit leave to amend

12
     FCA claim); Smith v. Yale University, *supra*, 415 F.Supp.2d at 89, 107 (granting leave to
13
     replead FCA *qui tam* and retaliation claims).  Failure to plead fraud with particularity likewise
14

15   does not support a dismissal with prejudice.  To the contrary, leave to amend is " 'almost

16   always' " allowed to cure deficiencies in pleading fraud. Luce v. Edelstein, 802 F.2d 49, 56 (2nd

17   Cir. 1986)(citation omitted).

18                                **CONCLUSION**
19
            For the reasons discussed above, Dr. Zemplenyi has more than adequately pleaded the
20
     causes of action in her amended complaint.  Defendants' motion to dismiss must be denied.
21

22          Respectfully submitted this 17th day of May, 2010.

23                                LYBECK MURPHY, LLP

24                                By: ___/s/ Benjamin R. Justus_____
                                      Lory R. Lybeck (WSBA #18125)
25                                    Benjamin R. Justus (WSBA #38855)
                                      Attorneys for Plaintiffs
26

---

Wn.2d 931, 941 (1996).

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 17th day of May, 2010, I caused to be filed the foregoing Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Under Rules 9(b) and 12(b)(6) with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following parties:

Counsel for Defendants:

David B. Robbins        drobbins@bbllaw.com, ECF@bbllaw.com

Renee M. Howard        rhoward@bbllaw.com

Counsel for Plaintiff United States of America:

Peter Angus Winn        Peter.Winn@usdoj.gov

All parties are registered as CM/ECF participants for electronic notification.

DATED at Mercer Island, Washington, this 17th day of May, 2010.

By: __ */s/ Benjamin R. Justus*_____
    Lory R. Lybeck (WSBA #18125)
    Benjamin R. Justus (WSBA #38855)
Attorneys for defendant
Lybeck Murphy, LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040
(206) 230-4255 /phone
(206) 230-7791 /fax
brj@lybeckmurphy.com