UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

U.S. EX REL EVA ZEMPLENYI, M.D., ET AL V. GROUP HEALTH COOPERATIVE, ET AL

(Attachment to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Under
Rules 9(b) and 12(b)(6))

# EXHIBIT A

Westlaw.

Not Reported in F.3d, 2003 WL 22019936 (C.A.11 (Ga.))
**(Cite as: 2003 WL 22019936 (C.A.11 (Ga.)))**

▷Only the Westlaw citation is currently available.

United States Court of Appeals, Eleventh Circuit.
Karon HILL, Plaintiff-Appellant,
UNITED STATES OF AMERICA, Plaintiff,
v.
MOREHOUSE MEDICAL ASSOCIATES, INC.,
Defendant-Appellee.
**No. 02-14429.**

Aug. 15, 2003.

Former biller for medical services provider brought suit against provider, under False Claims Act (FCA), alleging it submitted claims for payment to Medicare for services that were not performed. The United States District Court for the Northern District of Georgia, No. 00-01858-CV-GET-1, dismissed complaint for failure to alleged fraud with requisite particularity, and biller appealed. The Court of Appeals held that: (1) rule requiring that averments of fraud or mistake had to be stated with particularity in complaint applied to FCA claims, and (2) biller stated claim with requisite particularity.

Vacated, and remanded.

West Headnotes

**[1] Federal Civil Procedure 170A** ☞636

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
                170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
Rule requiring that averments of fraud or mistake had to be stated with particularity in complaint applied to claims under the False Claims Act (FCA). 31 U.S.C.A. § 3729; Fed.Rules Civ.Proc.Rule 9, 28 U.S.C.A.(b).

**[2] Federal Civil Procedure 170A** ☞636

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
                170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
Former biller for medical services provider stated fraud claim against provider, under False Claims Act, with requisite particularity, even though she was unable to provide patient names or exact dates that allegedly false claims were submitted to Medicare; biller, who worked in provider's billing department for seven months, had firsthand knowledge of provider's internal billing practices, she identified specific billers, coders, and physicians whom she observed making false claims, and she identified confidential documents in provider's possession that contained additional evidence of fraud. 31 U.S.C.A. § 3729; Fed.Rules Civ.Proc.Rule 9, 28 U.S.C.A.(b).

Appeal from the United States District Court for the Northern District of Georgia.Mike Bothwell, Attorney at Law, G. Mark Simpson, Mike Bothwell, P.C., Roswell, GA, for Karon Hill.

Jason M. King, Atlanta, GA, David L. Balser, Long, Aldridge & Norwood, LLP, Atlanta, GA, for Morehouse Medical Associates, Inc.

Before ANDERSON and WILSON, Circuit Judges, and OWENS,[FN*] District Judge.

PER CURIAM.

**\*1** Karon Hill appeals the district court's order granting Morehouse Medical Associates, Inc.'s (MMA's) motion to dismiss her amended complaint. Hill contends that her amended complaint, alleging fraudulent billing practices by MMA, meets the particularity requirements of Federal Rule of Civil Procedure 9(b).

BACKGROUND

MMA is a professional services organization established by the faculty of the Morehouse School of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.3d, 2003 WL 22019936 (C.A.11 (Ga.))
**(Cite as: 2003 WL 22019936 (C.A.11 (Ga.)))**

Medicine to provide medical care to the sick. The majority of MMA's patients are covered by Medicare, a federally funded health insurance program for the aged and disabled.

From June of 1999 until January 4, 2000, Hill worked as a certified professional coder and biller for MMA. After she resigned from MMA, she filed a complaint under seal pursuant to the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733. Therein she alleged that during the seven months that she worked for MMA, it routinely submitted claims for payment to the government for tests that it did not perform.[FN1] The government, however, declined to intervene in the action, and, therefore, the court unsealed the complaint and directed Hill to serve MMA with the complaint. After MMA received service of process, it moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to allege fraud with particularity in compliance with Rule 9(b). The district court denied the motion, but directed Hill to file an amended complaint that complied with Rule 9(b) within thirty days.

Accordingly, Hill filed an amended complaint, and therein she described the coding process that Medicare providers such as MMA use to submit a claim for payment to Medicare [FN2] and MMA's billing process [FN3] and furnished a blank copy of a Health Care Finance Administration (HCFA) Form 1500. In addition, she provided further details about MMA's five fraudulent billing schemes, who engaged in them, and the frequency of the schemes.

First, Hill alleged that after Medicare rejected claims for reimbursement, billers changed the diagnosis codes on the encounter forms to codes that would support Medicare reimbursement and then resubmitted the claims for payment. For example, Hill asserted that she observed Sylvia Washington, Theresa Bougelow, and Nicole Toomer change the diagnosis code for routine physical examinations, which are not reimbursed by Medicare, twenty-five to thirty times per week. Based upon information and belief, she further alleged that these changes were made at the instruction of Pat Newbill, the manager of MMA's billing and coding department.[FN4]

Second, she alleged that she observed dozens of claims submitted daily to Medicare wherein physicians clustered [FN5] the billing codes for established patient office visits to receive larger reimbursements

from Medicare. Third, she alleged that approximately five times per week physicians used the current procedural terminology (CPT) codes for consultations on the encounter forms when lower-paying new patient codes or established patient codes should have been used.

**\*2** Fourth, Hill alleged that physicians used the diagnosis codes for acquired immunodeficiency syndrome when the diagnosis codes for the human immunodeficiency virus were appropriate. Furthermore, based upon information and belief, she alleged that several of these claims were submitted to Medicare each week for patients who were examined at the Fairburn Road location of MMA while Dr. Harold DuCloux, Jr. and Dr. Nicole Ash-Mapp were the treating physicians on duty. Finally, based upon information and belief, she alleged that billers designated unsupervised resident physician office visits as supervised visits on encounter forms from MMA's outpatient clinic at Grady Hospital to avoid a downward adjustment in reimbursement.

Hill also alleged that she was aware that the false claims under these schemes were submitted to the government. She, however, further alleged that she could not identify patient names nor the exact dates that the fraudulent claims were submitted to Medicare, because the confidential documents containing such information are in the exclusive possession of MMA. Nevertheless, she identified these confidential documents as follows: (1) the patient charts and encounter forms for patient visits; (2) the HCFA Forms 1500 submitted to the government for reimbursement; and (3) the Explanation of Benefits (EOB) forms, which explain why claims were rejected.

After reviewing the amended complaint, MMA filed a motion to dismiss the amended complaint, because it did not allege fraud with particularity in compliance with Rule 9(b). The court granted the motion, and this appeal followed.

STANDARD OF REVIEW

We review a dismissal for failure to state a claim de novo. *Kissimmee River Valley Sportsman Ass'n v. City of Lakeland,* 250 F.3d 1324, 1325 (11th Cir.), *cert. denied,* 534 U.S. 1040, 122 S.Ct. 613, 151 L.Ed.2d 537 (2001). Additionally, when considering a motion to dismiss for failure to state a claim, we "must accept

Not Reported in F.3d, 2003 WL 22019936 (C.A.11 (Ga.))
**(Cite as: 2003 WL 22019936 (C.A.11 (Ga.)))**

the allegations in the complaint as true, construing them in the light most favorable to the plaintiff[ ] ." *White v. Lemacks,* 183 F.3d 1253, 1255 (11th Cir.1999).

DISCUSSION

[1] In her amended complaint, Hill alleged that MMA violated the FCA by routinely altering billing codes and thereby submitting fraudulent claims to the government. The FCA imposes liability on "[a]ny person who ... knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment." 31 U.S.C. § 3729(a)(1). "Without the *presentment* of ... a [false or fraudulent] claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the" FCA. *United States ex rel. Clausen v. Lab. Corp. of Am.,* 290 F.3d 1301, 1311 (11th Cir.2002), *cert. denied,* 537 U.S. 1105, 123 S.Ct. 870, 154 L.Ed.2d 774 (2003). Therefore, as the FCA imposes liability for fraudulent acts, Rule 9(b)'s particularity requirement is applicable to claims brought thereunder. *See id.* at 1308-10.

*3 [2] Rule 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). The purpose of Rule 9(b)'s particularity requirement is to "alert[ ] defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001) (internal quotation marks omitted). The particularity requirement, however, must be read in conjunction with Federal Rule of Civil Procedure 8's directives that a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a), and that "[e]ach averment of [the complaint] sh[ould] be simple, concise, and direct," *id.* R. 8(e)(1); *see also Friedlander v. Nims,* 755 F.2d 810, 813 n. 3 (11th Cir.1985) ("[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading" found in Rule 8.).

Thus, to comply with Rules 8 and 9(b), "some indicia

of reliability must be given in the complaint to support the allegation of" fraud. *Lab. Corp. of Am.,* 290 F.3d at 1311. To that end, the "plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* at 1310 (internal quotation marks omitted). Therefore, "pleadings generally cannot be based on information and belief." *Id.* (internal quotation marks omitted).

Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific "factual information [about the fraud] is peculiarly within the defendant's knowledge or control." [FN6] *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.,* 755 F.Supp. 1040, 1052 (S.D.Ga.), *reconsideration granted,* 755 F.Supp. 1055, 1058-59 (S.D.Ga.1990) (finding that Rule 9(b) applies to the FCA as amended in 1986); *see also United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir.1999) ("We have held that when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed...."). In that instance, the plaintiff may plead based upon information and belief, *Epic Healthcare Mgmt. Group,* 193 F.3d at 308, provided that she "accompan[ies][her] legal theory with factual allegations that make [her] theoretically viable claim plausible," *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir.2002) (emphasis omitted) (internal quotation marks omitted); *see also Lab. Corp. of Am.,* 290 F.3d at 1314 n. 25 (recognizing that "a more lenient pleading standard" is appropriate under Rule 9(b) when "evidence of fraud [i]s uniquely held by the defendant" provided that "the complaint ... set [s] forth a factual basis for such belief" (internal quotation marks omitted)).

*4 In *Laboratory Corp. of America,* the plaintiff alleged that the defendant, a medical testing corporation, engaged in six schemes through which it performed medically unnecessary tests over the course of ten years and thereby submitted false claims for Medicare reimbursements to the government in violation of the FCA. 290 F.3d at 1303. Although the plaintiff, who was not employed by the defendant, stated at the end of "each allegation that bills were submitted to the Government as a result of these schemes," nowhere in the complaints [FN7] "d[id] he provide any factual basis for his conclusory state-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.3d, 2003 WL 22019936 (C.A.11 (Ga.))
**(Cite as: 2003 WL 22019936 (C.A.11 (Ga.)))**

ment[s]." *Id. at 1312.* Instead, he merely described the practices the defendant could have used to defraud the government, "[b]ut, as to the plot's execution," "[h]e merely alleged that these practices resulted in the submission of false claims for payment to the United States." *Id.* (internal quotation marks omitted).

Although we were sympathetic to the difficult situation the plaintiff faced in obtaining supporting facts for his legal theory, we recognized that "[a]s a corporate outsider, he may have had to work hard to learn the details of the alleged schemes entered into by [the defendant] ... while not being privy to [the defendant's] policy manuals, files and computer systems." *Id.* at 1314. Nonetheless, the difficulty the plaintiff faced as a corporate outsider was not sufficient to justify relaxing Rule 9(b)'s pleading standard. *Id.* at 1314 n. 25. Moreover, we noted that although Rule 9(b)'s pleading standard may be relaxed when evidence of the fraud is exclusively within the defendant's possession, conclusory allegations such as those offered by the plaintiff did not justify relaxation. *Id.* Therefore, as the plaintiff was a corporate outsider and provided only conclusory allegations to support his legal theory, we affirmed the dismissal of his amended complaints. *Id.* at 1315.

Unlike the plaintiff in *Laboratory Corp. of America,* however, Hill worked in the very department where she alleged the fraudulent billing schemes occurred-MMA's billing and coding department. Thus, she has firsthand information about MMA's internal billing practices and the manner in which the fraudulent billing schemes were implemented. Moreover, she alleged that she observed MMA billers, coders, and physicians alter various CPT and diagnosis codes over the course of seven months and thus submit false claims for Medicare reimbursement to the government. Throughout her complaint, she identified the confidential documents within MMA's exclusive possession that contain additional evidence of the fraud.[FN8] In addition, she supported her legal theory with facts describing MMA's billing process, the specific CPT and diagnosis codes that were altered for each of the five billing schemes, and the frequency of submission of each type of claim. Furthermore, in some instances, Hill provided the names of the employees and physicians who were responsible for making the fraudulent changes and the clinics where the codes were altered. Most important, however, unlike the plaintiff in *Laboratory Corp. of America,*

Hill was privy to MMA's files, computer systems, and internal billing practices that are vital to her legal theory, because she worked in MMA's billing and coding department for seven months. *See id.* at 1314 (acknowledging that "an insider might have an easier time obtaining information about billing practices and meeting the pleading requirements under the" FCA).

**\*5** Thus, based upon Hill's legal theory and the specific factual allegations in her complaint, she "alert[ed the] defendants to the precise misconduct with which they are charged," and there is no evidence that her allegations are spurious. Ziemba, 256 F.3d at 1202 (internal quotation marks omitted). Moreover, as Hill was an employee within the billing and coding department and witnessed firsthand the alleged fraudulent submissions, her factual allegations provide the indicia of reliability that is necessary in a complaint alleging a fraudulent billing scheme. *See* Lab. Corp. of Am., 290 F.3d at 1311.

Accordingly, we find that Hill's amended complaint meets the particularity requirements of Rule 9(b).

CONCLUSION

We hold that the district court erred in granting MMA's motion to dismiss. Thus, we VACATE the district court's dismissal of Hill's amended complaint and REMAND this case for further proceedings consistent with this opinion.

> FN* Honorable Wilbur D. Owens, Jr., United States District Judge for the Middle District of Georgia, sitting by designation.

> FN1. Specifically, she alleged that MMA (1) used improper billing codes; (2) charged for the interpretation of outsourced laboratory tests; (3) changed current procedural terminology (CPT) codes after Medicare declined reimbursement and resubmitted claims for payment; (4) allowed residents to refer patients to specialists; (5) added modifiers to renal codes to receive larger reimbursements; (6) engaged in the upcoding of critical care; (7) engaged in the upcoding of treatment for patients with the human immunodeficiency virus to acquired immunodeficiency syndrome; (8) used cheat sheets for International Classification of Diseases, Ninth Revision

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.3d, 2003 WL 22019936 (C.A.11 (Ga.))
**(Cite as: 2003 WL 22019936 (C.A.11 (Ga.)))**

(ICD-9) codes; (9) allowed physicians without Medicare provider numbers to bill under other physicians' Medicare provider numbers; (10) waived the Medicare co-pay; and (11) billed for services not performed.

FN2. Hill alleged that Medicare generally consists of the following two basic parts: Part A, 42 U.S.C. §§ 1395c-1395i-5, provides basic insurance coverage for hospitalization, and Part B, 42 U.S.C. §§ 1395j-1395w-4, covers a percentage of the fee schedule amount for physician and laboratory services. Part B of the Medicare program assigns a CPT code to each procedure performed on a patient. In turn, the CPT code must be supported by a separate diagnosis code from the International Classification of Diseases, Ninth Revision, Clinical Modification (ICD-9-CM) system. Medicare providers are reimbursed for qualifying procedures by submitting a claim for payment to the Health Care Finance Administration (HCFA) through a fiscal intermediary. The claim is submitted on an HCFA Form 1500 that contains spaces for the relevant CPT and diagnosis codes.

FN3. Hill alleged that after the examination of a patient the doctor circles the applicable CPT and diagnosis codes on a preprinted encounter form. The encounter form is then submitted to the billing and coding department to verify that the proper codes were used on the encounter form. If there is a question as to the proper coding of a claim, the coders check the patient records or consult with the treating physician. Thereafter, the billers input the codes and patient information into a computer and generate bills in HCFA Form 1500 format for submission to Medicare through its fiscal intermediary.

FN4. Hill also asserted that during her employment with MMA she saw billers change the diagnosis code for (1) breast biopsies three to four times per week; (2) lab tests twenty to twenty-five times during her employment; and (3) x-rays five or six times during her employment. She also alleged on information and belief that Newbill in-

structed billers to make these changes and that Washington and Erline Joseph changed the diagnosis code for breast biopsies.

FN5. Clustering refers to the practice of using middle billing codes rather than tailoring the codes to the actual level of service rendered under the philosophy that the charges will average out over an extended period of time.

FN6. Rule 9(b)'s heightened pleading requirement also may be applied less stringently when the "fraud allegedly occurred over a period of time." *Fujisawa Pharm. Co. v. Kapoor,* 814 F.Supp. 720, 726 (N.D.Ill.1993); *see also Lab. Corp. of Am.,* 290 F.3d at 1314 n .25 (acknowledging that Rule 9(b)'s heightened pleading requirement may be relaxed "in appropriate circumstances to aid those alleging prolonged multi-act schemes"). In that instance, the plaintiff is not required to provide "a detailed allegation of all facts supporting each and every instance of submission of a false claim," *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.,* 238 F.Supp.2d 258, 268 (D.D.C.2002), but the complaint must set forth a representative sample "detail[ing] ... the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them," *Lab. Corp. of Am.,* 290 F.3d at 1310 (internal quotation marks omitted).

FN7. In *Laboratory Corp. of America,* we reviewed the plaintiff's first and second amended complaints. 290 F.3d at 1311.

FN8. Hill asserted that she was unable to provide patient names or the exact dates that claims were submitted to the government, because documents containing such information are within MMA's exclusive possession. Failure to allege patient names and the exact dates that claims were submitted to the government, however, is not fatal to a claim under the FCA. Our precedent requires only that "a plaintiff ... plead ... the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Lab. Corp. of Am.,* 290 F.3d at 1310 (internal

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.3d, 2003 WL 22019936 (C.A.11 (Ga.))
**(Cite as: 2003 WL 22019936 (C.A.11 (Ga.)))**

quotation marks omitted). Under the facts of this case, the question of "who engaged in" the fraudulent acts is answered by the names of the MMA employees and physicians who altered the CPT and diagnosis codes, not the patient names. *Id.* (internal quotation marks omitted). Additionally, to require Hill to provide the exact dates that claims were submitted to the government would require that she violate patient confidentiality by copying private records. As we are not prepared to encourage violations of patient confidentiality, we find that Hill need not provide the exact dates that claims were submitted to the government to satisfy Rule 9(b).

C.A.11,2003.
Hill v. Morehouse Medical Associates, Inc.
Not Reported in F.3d, 2003 WL 22019936 (C.A.11 (Ga.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.