Judge Ricardo S. Martinez
Noted for Hearing May 21, 2010

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* EVA ZEMPLENYI, M.D., and EVA ZEMPLENYI, M.D., individually,<br><br>Plaintiffs,<br><br>vs.<br><br>GROUP HEALTH COOPERATIVE, et al.,<br><br>Defendants. | NO.  C09-0603 RSM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

Relator, Eva Zemplenyi, submits an Opposition to Defendants' Motion to Dismiss that collects cases where False Claims Act ("FCA") relators have survived motions to dismiss and proceeded to discovery based on reasonably pled allegations and a plausible theory of liability. This is not one of those cases. Here, the relator attempts to elevate a garden-variety employment dispute into an FCA case based on an apparently uninformed and implausible theory of fraud by which she concludes that the Defendants must, somehow, have submitted false claims to the government. Despite her suggestion that her complaint can be augmented with details concerning ten examples of allegedly inappropriate cataract surgeries, these details will not cure the deficiencies, as these cases provide no particulars of fraudulent

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 1

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

conduct, and do nothing to change the fact that her underlying theory of fraud is fundamentally implausible, and thus deficient under Rules 8(a) *and* Rule 9(b).

Zemplenyi has also failed to identify facts that save her FCA retaliation claim from dismissal under Rule 12(b)(6). By her failure to respond to the motion, she also concedes that part of her claim is time-barred, and that she has no retaliation claim against the Defendants who were not her employer. Similarly, her non-response regarding dismissal of her unjust enrichment and common law fraud claims effectively concedes that they should be dismissed for lack of standing. Finally, she cites no persuasive authorities allowing her to bring a wrongful discharge in violation of public policy claim where statutory remedies exist.

In sum, Zemplenyi offers no compelling reasons why her entire complaint should not be dismissal under Rules 9(b) and 12(b)(6). As she has described the additional facts she would allege if permitted to amend, the futility of allowing further amendment is manifest.

## ARGUMENT

**I.  Zemplenyi Misconstrues Rule 9(b)'s Pleading Requirements and Cannot Cure Her Deficiencies Through the Identified "10 Cases"**

**A.  No Relaxing of Rule 9(b)'s Particularity Requirement Is Warranted**

Zemplenyi suggests that Defendants have somehow "overstated" Rule 9(b)'s express requirement of particularity for pleading fraud. It is difficult to overstate the requirements given the Rule's salutary purposes identified by the Ninth Circuit:

> (1) . . . provid[ing] defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) ... protect[ing] those whose reputation would be harmed as a result of being subject to fraud charges; and (3) ... 'prohibit[ing] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.[1]

---

[1] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotations and citations omitted).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 2

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

<␊

1  While Zemplenyi would ignore Rule 9(b)'s requirements, it is axiomatic that they apply to
2  FCA complaints, and no case she cites excuses her from compliance.
3      First, she argues that the Eleventh Circuit's decision in *U.S. ex rel. Clausen v.*
4  *Laboratory Corp. of America, Inc.* does not support Defendants' position because it was a
5  summary judgment case. That is simply wrong. *Clausen* was <u>not</u> an appeal of a summary
6  judgment; it was an appeal of a Rule 9(b) dismissal. 290 F.3d 1301, 1311 (11th Cir. 2002)
7  (discussing application of Rule 9(b) to the relator's complaint).
8      Second, she cites *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), for the now-outdated
9  standard that "a complaint cannot be dismissed 'unless it appears beyond doubt that [the non-
10 moving party] can prove no set of facts in support of [his or her] claim which would entitle
11 [him or her] to relief.'" Opp. at 3. The *Conley* standard has been replaced, however, by the
12 "plausibility" requirement under Rule 8(a) (and 9(b)) in *Bell Atlantic Corp. v. Twombly*, 550
13 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009). The
14 standard calls on the Court to dismiss the complaint whenever it fails to "state a claim to relief
15 that is plausible on its face":

> The *Twombly* standard replaces the lenient and longstanding rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The new reading raises a hurdle in front of what courts had previously seen as a plaintiff's nigh immediate access to discovery—modest in its demands but wide in its scope.

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Conley*).[2] Zemplenyi's complaint, in addition to failing to provide the particulars of fraud under Rule 9(b), also fails to satisfy the even more basic requirement that the factual theory of fraud be "plausible on its face." Here, she puts forth ever more implausible theories, without

---

[2] Dr. Zemplenyi's citation to *Michael's Building v Ameritrust*, 848 F.2d 674, 679 (6th Cir. 1988), is also misplaced. *Michael's* is a RICO case, decided in 1988, decades before *Twombly* and *Iqbal*. In any event, the facts of that case are easily distinguishable, as the plaintiff there pled the particulars of fraud by identifying specific fraudulent representations, and even attaching copies of the fraudulent loan documents to his complaint. No comparable details indicating actual fraud are provided by Dr. Zemplenyi.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 3

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

factual specification, of why any provider serving patients under a Medicare Advantage plan (where payment is made on a fixed, global basis) would knowingly perform medically unnecessary services.[3] That Zemplenyi can identify no associated claims, much less a factual basis for this self-defeating conduct, undoubtedly stems from the fact that the complaint's thesis is, at best, counterintuitive.

Third, Zemplenyi argues that Rule 9(b)'s requirements should be relaxed, or "applied less stringently" to her complaint on the basis that she "lacks access to all facts necessary to detail her claim" citing an unpublished case, *Hill v. Morehouse Medical Associates, Inc.*, 2003 WL 22019936 (11th Cir. Aug. 15, 2003), that even if it had precedential value, does not support her contention. Opp. at 5. The facts of *Hill* are unique and have been distinguished by other courts analyzing Rule 9(b) as to FCA complaints. *Hill* involved a relator who was a former employee in defendant Morehouse's billing department and thus had "firsthand information" regarding claims that were submitted by Morehouse. *Id.* at 4. While Hill did not identify actual claims, he was able to allege specific details concerning five fraudulent billing schemes that Morehouse used to submit claims to the government, allegations considered to be credible and reliable given Hill's billing responsibilities. Unlike Hill, Zemplenyi does not have any "firsthand knowledge" of Group Health's claim submission processes, or any activities involving the administration of its Medicare Advantage line of business. Opp. at 7 ("[Zemplenyi] had no role in submitting claims, or CMS bids, patient data, and other actuarial information."). Accordingly, her speculation that false claims must have been submitted for cataract surgeries (where there is no allegation that Group Health

---

[3] For example, without specification of the Defendants' conduct and in a highly obtuse manner, Zemplenyi appears to be alleging that somehow bid documents for Medicare Advantage contracts could be awry and result in inflated payment if a provider's costs are improperly high. See Am. Compl. ¶¶ 27-32, 51. This theory is not tied to these Defendants, nor is there specification of any bid documents or any falsity therein, nor is any legal authority offered that bid documents constitute claims or that accurate though high-cost bid documents could "cause" a false claim to be submitted. Thus, this spun theory does nothing to satisfy Rule 9(b). Moreover, it seems preposterous on its face to suggest that one would knowingly and needlessly drive up costs incurred in order to to help win a Medicare Advantage contract.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 4

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

even billed Medicare for cataract surgeries, given the capitated nature of managed care)[4] or that Medicare Advantage bid documents were improper, lack any "indicia of reliability" that courts look to in the rare instances where identification of actual false claims is excused.

A case more applicable to Zemplenyi's posture is *U.S. ex rel. Joshi v. St. Luke's Hospital*, 441 F.3d 552 (8th Cir. 2006), where an anesthesiologist accused a hospital of submitting false claims for certified nurse anesthetists' services, but did not allege the details of any claims. *Id.* at 557. The court did not relax Rule 9(b)'s pleading standard despite the fact that Dr. Joshi did not have any claims information in her possession, reasoning that Dr. Joshi's position did not give her generalized allegations any "indicia of reliability":

> Dr. Joshi's allegation that 'every' claim submitted by St. Luke's was fraudulent lacks sufficient 'indicia of reliability.' Dr. Joshi was an anesthesiologist at St. Luke's, not a member of the billing department, and his conclusory allegations are unsupported by specific details of St. Luke's and Dr. Bashiti's alleged fraudulent behavior.

*Id.* (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013–14 (11th Cir. 2005)).

Similarly, in *Corsello*, the Eleventh Circuit distinguished *Hill* and noted that the relator, who worked in sales, was neither a "corporate outsider" (as in *Clausen*) nor an "employee of the billing department" (as in *Hill*). *Id.* at 1013. While the relator had alleged "many details of numerous schemes, employees, and claims," including "the initials of patients whose Medicare claim forms were improperly completed" that allegedly "resulted in the submission of fraudulent claims," the court found these allegations deficient under Rule 9(b). *Id.* The court noted that Corsello provided no factual basis to suggest that any fraudulent claims "were ever actually submitted to the government," and thus refused to "make inferences about the submission of fraudulent claims because such an assumption

---

[4] *See* Am. Compl. ¶25 ("HMOs such as Group Health Cooperative have long been afforded a special role in delivering services to Medicare beneficiaries. . . . Pursuant to contracts with CMS, organizations offering these plans are paid by CMS on a capitated basis, typically in a lump sum per member, per month.")

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 5

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

would 'strip all meaning from Rule 9(b)'s requirements of specificity.'" *Id.* (citing *Clausen*, 290 F.3d at 1312 n.21). The court further noted:

> Corsello's contention that he was "aware" of billing practices was neither particular to any specific fraudulent claim against the government nor factually supported because Corsello conceded that he "did not have access to company files outside his own offices." Underlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government.

*Id.* at 1014. As in *Corsello*, Zemplenyi is neither an outsider to Group Health, nor was she employed in a billing position. Thus, there is no basis to relax Rule 9(b)'s pleading requirement as her unspecified allegations lack an "indicia of reliability." The ten cataract surgeries referenced in note 6 of her opposition do not cure the defect, as no facts are pled that support that false claims were submitted to the government with respect to these surgeries. Indeed, she does not even allege the patients were Medicare beneficiaries, and if they were that Group Health submitted a claim for payment for the surgery, given her allegation that Group Health provides services on a capitated (and not fee-for-service) basis (¶25). In short, Zemplenyi's alleged fraudulent scheme is lacking in detail under Rule 9(b) and facially "implausible" under *Twombly* and *Iqbal* and thus would not survive even a Rule 8(a) analysis.

B.      **"False Certification" and "Medical Necessity" Cases Miss the Point**

In addition to generally alleging that false claims for cataract surgeries must have been submitted, Zemplenyi suggests that FCA liability could be premised on "[f]alse certifications of compliance with applicable laws and regulations." Opp. at 11. Her reference to unspecified "certifications," however, does nothing to conform her complaint to the requirements of Rule 9(b). She does not identify:

- Any specific certification submitted by a Defendant in connection with a claim, or the circumstances under which the certification was made to the government;[5]

---

[5] The complaint refers to certification language on the "CMS-1500" billing form used to submit claims to Medicare contractors (¶39). She does not allege, however, that Defendants actually submitted the CMS-1500 for cataract surgery, including the ten surgeries identified in footnote 6. While she alleges (without factual support)

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 6

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

- The person making the certification.[6]

- Facts demonstrating why the certification was false;[7] or

- Facts demonstrating that the certification was material to the government's decision to pay a claim. *See Hopper v. Anton*, 91 F.3d 1261, 1266-67 (9th Cir. 1996).[8]

Zemplenyi inexplicably insists that Rule 9(b) should be relaxed if the complaint alleges "medically unnecessary services." Opp. at 12–13. It is unclear how this point addresses the sufficiency of her pleading under Rule 9(b). The case she cites in support, *U. S. ex rel. Lee v. SmithKline Beecham, Inc.*, actually favors Defendants' position, as there the

---

that Defendants "were required to complete reimbursement claim forms and submit[] them to [its Medicare contractor]," *id.*, she does not specify the types of services or circumstances under which CMS-1500 submission was required. As noted, Group Health provides services to beneficiaries of Medicare managed care plans, in exchange for "lump sum" monthly payment for each patient (¶25), untethered to the specific healthcare services actually provided. Thus, the suggestion that Defendants sought reimbursement for cataract surgeries through CMS-1500 claims for such patients is implausible, bordering on inconceivable, and Dr. Zemplenyi has identified no facts that give this allegation any "indicia of reliability." *Corsello*, 428 F.3d at 1013.

[6] The complaint states that "the health care provider is required to sign the [CMS-1500] form and state that 'I certify that the services shown on this form were medically indicated and necessary for the health of the patient.'" ¶39. She does not identify which providers signed or submitted such forms, no less whether any particular <u>Defendant</u> submitted a CMS-1500 form in connection with the cataract surgeries in question.

[7] For example, she does not identify a single instance where a specified provider signed and submitted the CMS-1500, or facts suggesting that the particualr provider knew, or should have known, that the service was not "medically indicated and necessary for the health of the patient." Am. Compl. ¶39. She does not allege that the requirements of a local Medicare contractor medical policy described at paragraphs 36-38 of her complaint were somehow incorporated by reference into this universal claim form, or that the certification represented anything other than the provider's subjective belief that the service was in fact medically appropriate for the patient.

[8] Cases cited by Zemplenyi demonstrate why her case is not a false certification case. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 91 F.3d 899 (5th Cir. 1997) involved Columbia/HCA's certification on its annual Medicare cost report that the claimed services were provided in compliance with laws and regulations governing the provision of those services, and it alleged violation of specific statutes governing those services. No such allegations exist here. *Ab-Tech Construction Inc. v. United States*, 31 Fed. Cl. 429 (1994) is also unavailing, as that case involved the controversial "implied certification" theory, and the relator pled facts that suggested the allegedly false implied certification of compliance with contractual requirements was material to the government's decision to pay. *Id.* at 434. The implied certification theory, however, is often rejected by courts, as it "has the practical effect of eliminating the requirement under the FCA of submitting a false or fraudulent claim (or of making a false claim or statement to reduce an obligation to the government under Section 3729(a)(7)). It is obviously an improper application of the False Claims Act to conduct that is better addressed through the many other statutory, regulatory, and contractual remedies at the government's disposal." John T. Boese, <u>Civil False Claims and Qui Tam Actions</u> (3d ed.) at §2.03[G][1][a].

---

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 7

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

Ninth Circuit dismissed an FCA case under Rule 9(b) and refused to relax Rule 9(b)'s requirements despite the relator's contention that evidence of fraud was within the defendant's exclusive possession:

> [G]iven that Lee worked as a supervisor . . . for over twenty years, was knowledgeable about the tests allegedly falsified, and was employed by SmithKline when he filed this action, he cannot fairly allege that SmithKline has sole possession of the facts evidencing an FCA violation.

245 F.3d 1048, 1052 (9th Cir. 2001). Similarly, Zemplenyi worked with Group Health for over twenty years, regularly performed the type of procedure about which she complains (cataract surgery) and she claims to have engaged in "protected activity" during her employment that should have put Group Health on notice that she would file an FCA claim. Thus, *Lee* confirms that the rigors of Rule 9(b) should not be relaxed here, as Zemplenyi has had no shortage of opportunities to identify factual indicia of fraud if in fact any existed.[9]

### C. Rule 9(b) Requires Differentiation Among the Defendants

Even in her opposition, Zemplenyi does not attempt to differentiate her fraud allegations among the seven named Defendants, which include five corporate entities and two physicians. Ignoring Rule 9(b) case law on point,[10] she suggests that "individualization" is "not required for corporate fraud," Opp. at 14, citing a securities fraud case not decided under Rule 9(b) that held that issuance of annual financial reports may be presumed to be the collective actions of the directors or officers of the corporation. Rule 9(b) requires that her allegations specify each defendant's role in the alleged fraud, and she has failed to do so. *United States ex rel. Brooks v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 527 (D. Md. 2006) ("The second amended complaint also lumps all defendants together without

---

[9] *U.S. ex rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001) does not support the adequacy of Plaintiff's pleading, as *Mikes* is a summary judgment case and is cited for its discussion as to the distinction between challenges to the quality of a service provided and to the medical necessity of providing the service in the first place. *Id.* at 699 & Pf. Opp. at 13. This distinction is irrelevant to compliance with Rule 9(b) requirements.

[10] *See* Defendants' Motion to Dismiss and Memorandum in Support (Doc. 15) at 8.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 8

identifying the persons, or even the corporation, making the alleged representation. In FCA cases, the identities of those making the misrepresentations is crucial to the complaint.")

### D. Rule 9(b) Applies to Each False Claims Act Count

Zemplenyi also obfuscates her obligations under Rule 9(b) by referring to her FCA allegations that do not specifically involve the presentment of a false claim, *i.e.*, her claims under 31 U.S.C. § 3729(a)(2) (knowingly making or causing a false statement to get a false claim paid) and § 3729(a)(3) (engaging in a conspiracy to get a false claim paid).[11] Even with respect to those claims, the complaint fails to specify any of the conduct that caused false claims to be submitted, any false statements or records, the parties who made the false statements or engaged in the alleged conspiracy, how false records might have been incorporated into any claims submitted, or the mechanics of the conspiracy alleged.

While FCA liability under § 3729(a)(2) and (3) does not depend upon the presentment of an actual false claim, Rule 9(b) requirements apply "with equal force" to these allegations and require pleading of the particulars of the fraudulent conduct. *See U.S. ex rel Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009); *U.S. ex rel Gagne v. City of Worcester*, 565 F.3d 40, 46, n.7 (1st Cir. 2009) ("As to subsection (a)(2) or (a)(3) claims, the relator must still connect the allegedly fraudulent statement to a planned claim on the government fisc, must show that the defendant intended the statement would have a material effect on the government's decision to pay a claim, and must plead the facts of the fraud with sufficient particularity to satisfy Rule 9(b)").[12] A § 3729(a)(2) claim requires specification of "the

---

[11] Remarkably, she suggests that *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220 (1st Cir. 2004), an often-cited Rule 9(b) case describing false claim details that need to be pled under §3729(a)(1), was "substantially overruled" by *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 552 U.S. 662 (2008). This is simply not so, and *Karvelas* and its progeny remain good law on the application of Rule 9(b) to §3729(a)(1) "presentment" claims. *See United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 46, n.7 (1st Cir. 2009) (citing *Karvelas* for proposition that FCA claims brought under §3729(a)(1) must "provide details that identify particular false claims for payment that were submitted to the government.")

[12] This quote is from the very same footnote cited by Zemplenyi for the opposite proposition although, of course, this clarifying language is omitted from her brief. Pl. Opp. at 10.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 9

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

recording of a false record" used to get a false claim paid. In *Grubbs*, the Fifth Circuit found that the relator satisfied Rule 9(b) on this point because he was able to identify (i) notes that certain defendants wrote to substantiate patient visits that never occurred, (ii) information recorded as "physician visits even before and without his actually personally seeing the patients," and (iii) "false progress notes" written in hospital medical records for "visits that did not actually occur." 565 F.3d at 193. No such specific allegations of false statements exist in Zemplenyi's complaint, nor is there identification of the parties that created them.

For FCA conspiracy claims (§ 3729(a)(3)), a plaintiff alleging conspiracy must "plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy." *Id.* In *Grubbs* the court found that for some defendants, the allegations satisfied Rule 9(b), as the complaint "attributed specific language to Drs. Groves and Kanneganti that occurred at [a] . . . meeting and which indicated, or at least from which a reasonable jury could infer, that they were in agreement between themselves and some members of the nursing staff to improperly record unprovided services for the purposes of getting fraudulent claims paid by the Government." *Id.* at 193–94. Zemplenyi, however, identifies no such statements or facts that would show an agreement among any of the Defendants to defraud Medicare (much less which ones), or any acts taken in furtherance of a conspiracy.

Accordingly, all three of Zemplenyi's FCA claims (Counts 1, 2 and 3) fail under Rule 9(b) and should be dismissed with prejudice.

II. **The FCA Retaliation Claim Fails for Lack of Specification of Protected Activity**

As a preliminary matter, Zemplenyi's opposition brief does not contest that an FCA retaliation claim may not be asserted against non-employers. *See* Doc. 15 at 11–12. Thus, her fourth cause action must be dismissed as to all Defendants other than Group Health Permanente. She also does not contest that her FCA retaliation claim concerning the allegedly "retaliatory transfer" to Federal Way in April 2006 is time-barred. *Id.* at 12–13.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 10

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511 F: (206) 622-8986

While Zemplenyi does maintain that she was engaged in "protected activity", she fails to distinguish the cases that have dismissed, <u>at the pleadings stage</u>, similar allegations. Under The case she relies upon, *Mendiondo v. Centinela Hospital Medical Center,* is readily distinguishable, as there, the relator alleged that she complained to the defendant's CEO about possible "civil and criminal violations," which the court determined, in context, put it on notice that she was engaging in protected activity. 521 F.3d 1097, 1104 (9th Cir. 2008). Here, Zemplenyi does not allege that she informed her employer that it was violating the law, nor did she otherwise notify it of facts suggesting she was contemplating bringing an FCA claim. Her entire allegation is that she (i) "expressed her opinion" or "object[ed]" to unspecified persons that the waiting period between a pre-operative exam and cataract surgery "was too long" (¶¶67, 68); and (ii) expressed her "concerns," to a compliance officer (¶70), and to Dr. Lee (¶72), that certain patients had cataract surgery that she believed did not conform to a Medicare coverage policy, that by its nature does not have the force of law. Given her role as an ophthalmologist working at Group Health, these cannot be viewed as communications that put her employer on notice that she was engaging in conduct in furtherance of a *qui tam* action. Accordingly, her retaliation claim must be dismissed.

### III.  Wrongful Discharge Claim Cannot Be Brought with FCA Retaliation Claim

Washington case law clearly supports dismissal of state common law wrongful discharge claims where adequate statutory remedies exist. *Hollenback v. Shriner's Hosp. for Children,* 149 Wn. App. 810, 206 P.2d 337 (2009); *Hochberg v. Lincare, Inc.,* 2008 WL 1913853 (E.D. Wash. April 28, 2008); *Korslund v. Dyncorp Tri-Cities Servs., Inc.,* 156 Wn.2d 168, 181, 125 P.3d 119 (2005). Zemplenyi does not even acknowledge these authorities. Instead, she cites an inapposite case that decided whether the FCA expressly preempts an action for retaliation in violation of public policy. *Hoefer v. Fluor Daniel, Inc.,* 92 F. Supp. 2d 1055, 1059 (C.D. Cal. 2000). Here, Defendants' motion is not based on federal preemption; it arises because the Washington courts have consistently rejected

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 11

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986


wrongful discharge claims where other statutory remedies exist (whether state or federal). Zemplenyi points to the unpublished case *Sweeney v. Manorcare Health Services, Inc.*, 2006 WL 1042015 (W.D. Wash. Apr. 5, 2006) as authority. That point is hardly worthy of citation in that the opinion does not acknowledge Washington authorities on point at that time (*Korshund, supra*, and *Roberts v. Dudley*, 140 Wn2d 58, 993 P.2d 901 (2000)), and predates the Washington Court of Appeals decision in *Hollenback* and the Eastern District's opinion in *Hochberg*. More importantly, the court did not even have occasion to address the issue of whether a wrongful discharge claim can be asserted with an FCA retaliation claim because the defendants apparently did not raise it. Accordingly, her wrongful discharge in violation of public policy claim must be dismissed.

### IV. Zemplenyi Does Not Dispute She Lacks Standing to Bring Unjust Enrichment and Common Law Fraud Claims on Behalf of the Government

Zemplenyi's opposition does not contest that she lacks standing to assert her common law fraud and unjust enrichment claims. *See* Doc. 15 at 18–19. These claims, therefore, should be dismissed with prejudice.

### V. With Prejudice Dismissal of the Complaint is Appropriate

The Court should dismiss with prejudice all claims where amendment would be futile. Fed. R. Civ. P. 15(a); *Eminence Capital v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Zemplenyi was employed at Group Health for over twenty years, has already amended her complaint once, and now her opposition brief has provided the additional detail she would add if permitted another amendment. *See Corsello v. Lincare, Inc.*, 428 F.3d at 1015 (with prejudice dismissal under Rule 9(b) appropriate where the most recently amended complaint contained the same deficiencies as the previous complaint). It is clear that she still cannot satisfy Rule 9(b) or state a claim under Rule 12(b)(6) as to her remaining claims. Thus, dismissal with prejudice is appropriate and should be granted as to all claims.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 12

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511 F: (206) 622-8986

DATED this 21st day of May, 2010.

        BENNETT BIGELOW & LEEDOM, P.S.

        By     s/ David B. Robbins
           David B. Robbins, WSBA 13628
           Renee M. Howard, WSBA 38644
           Bennett Bigelow & Leedom, P.S.
           1700 Seventh Avenue, Suite 1900
           Seattle, WA 98101-1397
           Phone: 206-622-5511
           Fax: 206-622-8986
           Email: drobbins@bbllaw.com
           Email: rhoward@bbllaw.com
        Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2010, I caused to be electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)** and this appended **CERTIFICATE OF SERVICE** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Counsel for Plaintiff United States of America *ex rel.*:

    U.S. ATTORNEY'S OFFICE (SEATTLE):

        Peter Angus Winn – Peter.Winn@usdoj.gov

Counsel for Plaintiff Eva Zemplenyi, MD, *Relator*

        Benjamin R. Justus – brj@lybeckmurphy.com
        James Paul Murphy – jpm@lybeckmurphy.com

DATED this 21st day of May, 2010.

                s/ David B. Robbins

{1834.00006/M0145660.DOC; 2}

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT UNDER RULES 9(b) AND 12(b)(6)
C09-0603 RSM – Page 13

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986