1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
9                                        AT SEATTLE

10    UNITED STATES OF AMERICA, ex rel.        CASE NO. C09-603 RSM
      EVA ZEMPLENYI, M.D., and EVA
11    ZEMPLENYI, M.D., individually,           ORDER GRANTING IN PART
                                               DEFENDANTS' MOTION TO
12                      Plaintiff,             DISMISS

13          v.

14    GROUP HEALTH COOPERATIVE,
      GROUP HEALTH PERMANENTE,
15    GROUP HEALTH OPTIONS, INC., KPS
      HEALTH PLANS, GROUP HEALTH
16    NORTHWEST,

17                      Defendants.

18

19                                  **I. INTRODUCTION**

20          This matter comes before the Court on Motion to Dismiss (Dkt. #21) brought by

21    Defendants Group Health Cooperative, Group Health Permanente, Group Health Options, Inc.,

22    KPS Health Plans, and Group Health Northwest ("Defendants").  Plaintiff and relator Eva

23    Zemplenyi, M.D. ("Plaintiff") brings suit individually and on behalf of the United States of

24    America.  The United States has declined to intervene in this *qui tam* action.  Plaintiff's Second

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 1

Amended Complaint (Dkt. #20) alleges fraud, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1-3), and for retaliation in violation of § 3730(h).  Defendants argue that Plaintiff's Second Amended Complaint fails to plead fraud with particularity under the FCA as required by Federal Rule of Civil Procedure 9(b), and fails to state a plausible theory under Rule 12(b)(6).  Defendants also argue that Plaintiff's retaliation claim under the FCA should be dismissed under Rule 12(b)(6) because Plaintiff could not have reasonably suspected that Defendants were submitting false claims.

## II. BACKGROUND

Plaintiff is an ophthalmologist who was employed by Defendant Group Health and Group Health Permanente from 1988 until 2007.  In her Second Amended Complaint, Plaintiff alleges that Defendants performed medically unnecessary cataract surgeries in order to increase revenue, allegedly resulting in false claims being submitted to Medicare for reimbursements.  In 2005, Defendants allegedly dispensed with Medicare guidelines requiring a pre-operative examination prior to surgery.  Throughout 2005 and 2006, Plaintiff claims to have voiced her objections over what she saw as the performance of unnecessary surgeries and reported her concerns to a Medicare Compliance Officer.  As a result of her actions, she alleges that her job was constructively terminated, as she was subject to a negative performance review without prior discussion or opportunity to respond, and subject to an investigation.  In 2007, Plaintiff resigned, alleging that she had little choice under the circumstances.

# III. DISCUSSION

## A. Fraud under the FCA

The FCA imposes liability on any individual or entity that "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [to the government]; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1).  Pursuant to the Act, a person may file a *qui tam* action on behalf of the federal government for any violation of § 3729.  31 U.S.C. § 3730(b).  The Ninth Circuit has specifically held that Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting the fraud or mistake, including "the who, what, when, where, and how of the misconduct charged."  *Ebeid ex rel. U.S.* v. *Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010).

In applying this standard, the Ninth Circuit noted that a plaintiff alleging violations of the FCA is not required to allege all facts supporting each and every instance of fraud under the particularity standard of Rule 9(b).  *Id.*  However, the *Ebeid* Court explained that allegations of particular details of a scheme must be paired with "reliable indicia that lead to a strong inference that [false] claims were actually submitted."  *Id.* at 998-999.  Moreover, the Ninth Circuit has made clear that claims brought under the FCA must meet the narrow requirement set forth under the statute, noting that "[i]t is not the case that any breach of contract, or violation of regulations, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA."  *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996).  Finally, allegations of a fraudulent scheme alone cannot satisfy the particularity requirements set forth under Rule 9(b).  *U.S. of America ex. rel. Aflatooni v. Kitsap Physicians Service*, 314 F.3d 995, 1002 (9th Cir. 2002).

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 3

1    In her Second Amended Complaint, Plaintiff has elaborated on the alleged scheme

2  describing how Defendants stand to benefit from the increase in cataract surgeries.  Significantly,

3  as noted *supra*, not every violation of a regulation that results in the wrongful receipt of money

4  from the government can constitute an allegation of a fraud under the FCA.  *Hopper*, 91 F.3d at

5  1265.  The scheme alleged is difficult to construe as a violation of the FCA upon a consideration

6  of the capitated payment system, in which a health care provider is paid a contracted or fixed rate

7  per patient regardless of the number or type of services provided to the enrolled member.  Under

8  such a system, it cannot be said that false claims are being made, since payments remain the

9  same regardless of whether a surgery is performed or not.  While Plaintiff puts forth that by

10  incurring higher costs, Defendants may receive higher capitated payments for managed care

11  beneficiaries in the future, it nonetheless remains the case that those costs are self-incurred, and

12  the government continues to pay a flat rate.  Defendants receive payments in a fixed amount per

13  member, per month, and thus the government is not spending additional money when an

14  individual surgery is performed.  *Frew v. Hawkins*, 401 F.Supp.2d 619, 670 (E.D. Tex. 2005).

15    In addition, Plaintiff has strained to link the specific examples of patients who underwent

16  allegedly unnecessary cataract surgery to the fraudulent activity she alleges.  Indeed, Plaintiff

17  describes the surgery dates and references six cases in which the patients allegedly did not meet

18  the proper criteria for surgery.  Yet the allegations concerning the specific patients fail to support

19  the proposition that false claims evincing a fraudulent scheme have been filed.  Amidst the

20  background of a capitated payment system, it is simply too speculative to find that the surgical

21  procedures performed on these individual patients are part of the alleged fraudulent scheme,

22  where the performance of allegedly unnecessary surgeries does not result in increased payments

23  to the Defendants.

24

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 4

1    Similarly, Plaintiff's allegations of false certification cannot stand.  Even if Defendants

2    were certifying compliance to the government, the allegations of false certification do not

3    comport with the law regarding what constitutes fraud under the FCA.  To bring a claim under

4    the FCA based on a false certification theory, a plaintiff must prove four elements: (1) that there

5    be a false claim rather than a "mere unintentional violation," (2) that there be scienter, or a

6    "palpably false statement, known to be a lie when it is made," (3) that the false statement must be

7    material to the government's decision to payout money to the claimant, and (4) that there be an

8    actual claim, "which is to say, a call on the government fisc."  *U.S. ex rel. Hendow v. Univ. of*

9    *Phoenix*, 461 F.3d 1166. 1172-73 (9th Cir. 2006).  Since the conduct alleged did not alter the

10   payments made by the government, it cannot be said that any alleged false statement was

11   material to the government's decision to pay.  Furthermore, the alleged fraudulent conduct could

12   not have resulted in additional payments by the government because there was no false claim.

13   Taken together, the allegations of the existence of a scheme are not sufficiently linked to

14   "reliable indicia" that would raise a strong inference that false claims were submitted, as required

15   by *Ebeid,* 616 F.3d at 998-999.

16    Plaintiff has had repeated opportunities to amend her complaint, and there is no

17   indication that her claims brought under § 3729(a) could be saved by granting her leave to

18   amend.  As such, Plaintiff's claims under § 3729(a) are dismissed with prejudice.  *See Ebeid,* 616

19   F.3d at 1001 (affirming dismissal with prejudice of second amended FCA complaint).

20

21   **B.  Retaliation under the FCA**

22    Plaintiff alleges that she suffered retaliation as a result of her complaints about the

23   increased performance of cataract surgery and that such retaliation constitutes a violation of the

24   FCA.  *See* 31 U.S.C. § 3730(h).  The FCA protects "whistle blowers" from retaliation by their

1 employers for protected activities.  Accordingly, the FCA provides relief for employees who are

2 "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated

3 against in the terms and conditions of employment because of lawful acts done by the employee..

4 . . in furtherance of an action under this section or other efforts to stop 1 or more violations of

5 this subchapter."  31 U.S.C. § 3730(h).

6      A plaintiff alleging a FCA retaliation claim need not show that the defendant actually

7 submitted a false claim to the government, only that she reasonably suspected as much.  *See*

8 *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008).  As such, the

9 heightened pleading standard for fraud claims does not apply, and the standard employed is

10 established by Rule 12(b)(6).  *Id.*  To succeed on a claim for retaliation under the FCA, an

11 employee must prove three elements: (1) that the employee engaged in activity protected under

12 the statute; (2) that the employer knew that the employee engaged in protected activity; and (3)

13 that the employer discriminated against the employee because she engaged in protected activity.

14 *Id.; Moore v. California Inst. of Tech. Jet Propulsion Lab.,* 275 F.3d 838, 844 -845 (9th Cir.

15 2002).

16      At this early stage, Plaintiff has stated sufficient factual allegations such that her claim

17 for retaliation may move forward.  For purposes of the first element, Plaintiff engaged in

18 protected activity under the FCA if she reasonably believed that Defendants were committing

19 fraud against the government, and Plaintiff investigated that fraud.

20      Plaintiff alleges that she believed that an increase in the number of cataract surgeries

21 performed along with surgeries performed on patients who had a pre-operative examination over

22 six months prior to surgery represented a violation of Medicare guidelines.  In her complaint,

23 Plaintiff states enough facts to support her contention that she subjectively, and in good faith,

24

believed that fraud was occurring.  Furthermore, it cannot be said that Plaintiff's believe was

objectively unreasonable.  At the 12(b)(6) stage, Plaintiff's contentions that she believed

guidelines were not being followed, too many cataract surgeries were being performed, and

Defendants stood to gain financially from the surgeries, constitute sufficient factual allegations

to conclude that her belief was objectively reasonable.

The second element of a retaliation claim requires the employer to know that Defendant

was engaged in protected conduct.  Unless an employer is aware that its employee is

investigating fraud, the employer cannot "possess the retaliatory intent necessary to establish a

violation of 3730(h)."  *Hopper*, 91 F.3d at 1269 (citing *Robertson v. Bell Helicopter Textron*, 32

F.3d 948, 950-52 (5th Cir. 1994)).  Plaintiff alleges that she had numerous conversations with

supervisors expressing her concerns, and filed reports regarding her concerns.  Plaintiff's

allegations are sufficient to raise the prospect that her employer knew that she was engaged in

protected conduct arising from her concern that fraud was being committed.

Finally, the employer must have discriminated against the employee because she engaged

in protected activity.  Plaintiff alleges that she was subject to negative performance reviews

which typically precede termination, that she was not given an opportunity to respond, that she

was the subject of an investigation, and that her supervisors intended to terminate her

employment.  If accepted as true, Plaintiff sufficiently alleges that she was discriminated against

as a result her protected activity regarding the alleged fraud.

## C. Incorporation by Reference

The Court finds that Defendants' inclusion of links to external materials constitutes

presentment of matters outside the pleading under Rule 12(d).  The Court did not consider these

materials for purposes of this Motion.

1

2                                        **IV. CONCLUSION**

3          Having reviewed the relevant pleadings, the declarations attached thereto, and the

4   remainder of the record, the Court hereby finds and ORDERS:

5          Defendants' Motion to Dismiss (Dkt. #21) is GRANTED as to Plaintiff's claims for

6   violations of the False Claims Act, 31 U.S.C. § 3729(a)(1-3) and DENIED as to Plaintiff's

7   claim for retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h).

8

9          Dated March 3, 2011.

10

11

12                                         RICARDO S. MARTINEZ
                                           UNITED STATES DISTRICT JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 8